669 So.2d 384 (1996)
STATE of Louisiana
v.
Donald ROSS.
No. 95-KK-1798.
Supreme Court of Louisiana.
March 8, 1996.
*385 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Stephen D. Enright, Jr., for Applicant.
Kevin Vincent Boshea, for Respondent.
PER CURIAM:[*]
We granted certiorari to consider the correctness of the trial court's order suppressing one of several statements made by the defendant after his arrest for second degree murder and after he asserted his right to confer with counsel during custodial interrogation. Because we find that the trial court correctly ruled that the defendant's spontaneous and unsolicited statements were admissible but erred in excluding his response to a single question asked by the police, we reverse in part the ruling made below.
On the afternoon of November 26, 1994, approximately three hours after the New Orleans Police had issued a warrant for his arrest following the shooting death of a Freddie Jackson, the defendant surrendered himself to Officer Troy Oliver at the Fourth District stationhouse. The defendant was accompanied by his brother who held an unloaded revolver allegedly used in the offense. The defendant informed Oliver that he had shot Jackson in self-defense. The officer immediately secured the weapon and advised the defendant of his Miranda rights. The defendant indicated that he understood his rights and that he was willing to meet with homicide detectives. Oliver then transported the defendant to the Homicide Division where he was met by Detectives Norman McCord and Marco Demma. Advised for a second time of his Miranda rights by the detectives, and informed that he was under arrest for Jackson's death, the defendant again indicated that he had shot Jackson in self-defense. The defendant then stated that "he'd rather not make any other statements until he had the advice of counsel."
The detectives did not attempt to question the defendant further but began processing the paperwork in connection with his arrest and booking. As they did so, the defendant suddenly began talking to the officers, informing them that he had shot only after Jackson had opened fire on him and that he had returned fire twice, with one bullet going through the roof of his car as he attempted to flee the scene. Demma interrupted the defendant, reminded him that he had been advised of his rights and that he had requested an attorney before answering any questions. The defendant "kept talking" and Demma asked him what had happened to the shell casings for the bullets he had fired. The defendant replied that he took the casings *386 out of the gun's cylinder and "threw [them] out the window at an unknown location." When Demma asked if he would be willing to give a formal recorded statement, the defendant grabbed his chest, replied that he did not want to say anything further, and asked to go to the hospital. Demma had the defendant taken to Charity Hospital for a routine and uneventful medical examination and then to Central Lockup where he was booked for Jackson's murder.
The trial court correctly ruled that the defendant's spontaneous and unsolicited statements made to Detective Demma did not result from custodial interrogation, or questioning "reasonably likely to elicit an incriminating response...." Rhode Island v. Innis, 446 U.S. 291, 302, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980). The defendant's prior assertion of his Fifth Amendment right to counsel under Miranda therefore did not bar admission of those statements. See State v. Knowles, 444 So.2d 611 (La.1984); State v. Germain, 433 So.2d 110 (La.1983).
The court erred, however, in concluding that the bright-line rule of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), precluded any interrogation of the defendant once he indicated his desire to speak with counsel. Edwards bars police-initiated custodial interrogation of an accused after he has asserted his right to the presence of counsel "unless the accused himself initiates further communication, exchanges, or conversations with the police." Id., 451 U.S. at 484-85, 101 S.Ct. at 1885 (emphasis added). The defendant's spontaneous statements made after the assertion of his Miranda rights clearly "evinced a willingness and a desire for a generalized discussion about the investigation...." Oregon v. Bradshaw, 462 U.S. 1039, 1045-46, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983). He had thereby re-initiated communication with the police about Jackson's death, a point underscored by Detective Demma when the officer reminded the defendant that he had just asked for counsel before making any statement. Detective Demma reasonably concluded from the defendant's continued willingness to speak to him that the defendant had changed his mind about discussing Jackson's death despite the earlier invocation of his Miranda rights. Under these circumstances, the officer's single follow-up question did not violate Edwards's per se rule. See Bradshaw, 462 U.S. at 1045-47, 103 S.Ct. at 2835; Knowles, 444 So.2d at 612; Germain, 433 So.2d at 115-16.
That the defendant reinitiated communication with the police about the offense also bears on the question of whether he knowingly and voluntarily waived his Miranda rights when he responded to Demma's question. Bradshaw, 462 U.S. at 1045-47, 103 S.Ct. at 2835. Miranda waivers may be either explicit or implicit, North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); State v. Harvill, 403 So.2d 706 (La.1981), and their validity turns on the totality of the circumstances surrounding the statement. Butler, 441 U.S. at 374-75, 99 S.Ct. at 1757-58. In this case, the defendant controlled the pace and scope of his communications with the police about Jackson's murder by selectively invoking his Miranda rights. He thereby demonstrated his understanding of those rights and his capacity to regard or disregard them of his own volition. The record otherwise discloses no coercion used by the police to make the defendant change his mind about discussing Jackson's death and thus fully supports a finding that the defendant made a knowing and voluntary waiver of his Miranda rights.
Accordingly, the ruling of the trial court is reversed to the extent that it bars admission of the defendant's statement in response to Detective Demma's question regarding the spent bullet casings. This case is remanded to the district court for all further proceedings in accord with the law.
NOTES
[*] The Honorable Vanessa Guidry-Whipple, Judge, Court of Appeal, First Circuit, sitting ad hoc for Calogero, C.J., recused.