769 So.2d 141 (2000)
STATE of Louisiana
v.
Christopher DEROUSELLE.
No. 97-KA-2590.
Court of Appeal of Louisiana, Fourth Circuit.
August 30, 2000.
*143 Harry F. Connick, District Attorney of Orleans Parish, Theresa A. Tamburo, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant.
Court composed of Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY and Judge PHILIP C. CIACCIO, Pro Tem.
WALTZER, J.
The Supreme Court has remanded this case with the order to consider all assignments of error originally asserted by appellant. In our original opinion we reversed the trial court judgment and ordered a new trial on the basis of assignment of error No. 4. On remand, we affirm the conviction and sentence for the reasons below.

STATEMENT OF THE CASE
By grand jury indictment dated 28 March 1996, defendant was charged with second degree murder; and, he pleaded not guilty. The trial court denied defendant's motion to suppress the identification on 24 October 1996; and, on 18 and 20 February 1997, defendant was tried by a twelve-member jury that found him guilty as charged. The trial court denied defendant's motion for new trial on 10 March 1997; and, on the same day, the trial court sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

STATEMENT OF THE FACTS
On 21 January 1996, shortly after 8:00 p.m., police responded to a call about a shooting at 2649 Louisa, where they found *144 Sandra Taylor dead from five gunshot wounds. Dr. Paul McGarry, who performed the autopsy, testified that the gun was less than two feet away from the victim when she was shot. He also testified that Ms. Taylor had cocaine in her system.
Dana Duncan, who was Ms. Taylor's friend, testified that she saw defendant riding a white bicycle on the morning of 21 January and that he asked her if she knew Ms. Taylor. Ms. Duncan said that she told him that she did not because she did not trust him. She saw him again later that evening at the corner of Louisa and Dorgenois, and he again asked her if she knew Ms. Taylor. She again told him that she did not, and she then told Ms. Taylor that someone was looking for her. She further testified that as she left Ms. Taylor's home that evening, she saw defendant peeping from around the corner. She told the police that defendant was wearing a black and yellow starter jacket. Ms. Duncan chose defendant's picture out of a photographic lineup.
Charles Craft, who was Ms. Taylor's fiancé, testified that on the afternoon of the shooting, a man named Terry or Kerry came to their house looking for Ms. Taylor. He further testified that he had never seen this person before and that this man said that he was Ms. Taylor's nephew. When Craft told this person that Ms. Taylor was not home, he left with another person. Craft testified that as he was leaving the house later that evening to get a sandwich, he saw the man, who had a white bicycle, standing on the street corner about one hundred feet from the house. Craft said that he was half a block from the house when he heard gunshots coming from his house. He testified that he then saw the young man, who wore either a black and yellow or blue and yellow starter jacket, leave his house, get on the white bicycle, and ride toward the Florida housing project. Craft went back to the house where he found Ms. Taylor lying dead on the floor. He identified defendant in a photographic lineup several days later as the young man he saw leaving Ms. Taylor's house.
Officer Kyle Hinrichs, who was the first officer on the scene, testified that he had to leave when he received a call about a shooting a few blocks away. The police found a green bicycle and a gun near the scene, but ballistic tests showed that the bullets removed from Ms. Taylor did not come from that gun. Officer Norbert Zenon, who arrested defendant at his home, admitted that he did not conduct a search of defendant's home for evidence. He also testified that Officer Beaulieu told him that a person named Kerry or Terry was responsible for the shooting and that the same officer later told him that his confidential informant told him that defendant shot Ms. Taylor. Officer Shelita Butler testified that Ms. Taylor had been a confidential informant who had given her information about various drug dealers, including Carmella Brown, in the area.

DISCUSSION

ERRORS PATENT
A review of the record reveals one error patent, namely that the trial court sentenced defendant without observing the twenty-four hour delay after denying defendant's motion for new trial as required by La.C.Cr.P. art. 873; and, the record does not show that defendant waived the delay. The failure to observe the delay is deemed harmless error where the defendant does not challenge his sentence on appeal. State v. Ward, 94-0490 (La.App. 4 Cir. 2/29/96), 670 So.2d 562; State v. Collins, 584 So.2d 356 (La.App. 4 Cir.1991). Because defendant is not challenging his sentence in the present, the failure to observe the delay is harmless. There are no other errors patent.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant complains that the State failed to present sufficient evidence to prove that he was the person shot and killed Sandra *145 Taylor. He points to the lack of physical evidence linking him to the crime and to the fact that no motive was shown.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989).
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012. This is not a separate test from Jackson v. Virginia, but is instead an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984); State v. Addison, 94-2431 (La.App. 4 Cir. 11/30/95), 665 So.2d 1224.
Defendant was found guilty of second degree murder, which is defined in La.R.S. 14:30.1 as the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm. Defendant does not argue that the State failed to present sufficient evidence of the statutory elements of second degree murder; rather, he is asserting that the State failed to prove his identity as the killer. Looking at all of the evidence in the light most favorable to the prosecution, the State presented sufficient circumstantial evidence that defendant was the person who shot and killed Sandra Taylor. Charles Craft, who had seen defendant earlier in the day inquiring after Ms. Taylor's whereabouts, saw defendant running from Ms. Taylor's house shortly after Craft heard gunshots coming from her house; and, this evidence excludes every reasonable hypothesis of innocence. Hence, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant complains that during closing argument, the State commented on facts not in evidence and made an impermissible reference to evidence of other crimes allegedly committed by defendant. Defendant argues that a mistrial was required under La.C.Cr.P. art. 770 when the prosecutor referred to defendant as a hit man during closing argument.
A mistrial is warranted under Article 770 when certain remarks are considered so prejudicial and potentially damaging to a defendant's rights that even a jury admonition cannot provide a cure. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. Potentially damaging remarks include direct or indirect references to another crime committed or alleged to *146 have been committed by the defendant, unless that evidence is otherwise admissible. La.C.Cr.P. art. 770(2). A failure to move for a mistrial is a waiver of the error since Article 770 requires a motion by the defendant. Comment (b) to Article 770. When a defendant's objection is overruled, the defendant is not required to move for an admonition or mistrial to preserve his rights on appeal; but, when the objection is sustained and the trial court presumably willing to give the defendant whatever relief to which he is entitled, there is no reason defendant should not be required to request an admonition or mistrial if he wants one. State v. Baylis, 388 So.2d 713 (La.1980); State v. Grant, 531 So.2d 1121 (La.App. 4th Cir.1988), writ denied 567 So.2d 1117 (La.1990). The defendant cannot complain of the alleged error unless at trial he requested and was denied an admonition or a mistrial. State v. Michel, 422 So.2d 1115 (La.1982).
A review of the trial transcript shows that the trial court sustained defendant's objection to the "hit man" comment by the prosecutor; however, defendant failed to request either an admonition or a mistrial after the trial court sustained the objection. Therefore, defendant cannot now complain of the trial court's failure to grant a mistrial when he failed to request such relief. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, defendant complains that the trial court erred in allowing the 911 call made by Charles Craft to be played to the jury. Defendant argues that the tape was inadmissible because it was irrelevant in that it presented no evidence of the identity of the perpetrator. He further argues that the tape was highly inflammatory in the repetitive and distraught cries of Craft.
A review of the trial transcript shows that defense counsel objected to the playing of the 911 tape, but he did not state a basis for the objection. La. C.E. art. 103(A)(1) provides that error may not be predicated on a ruling admitting evidence unless a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of the objection. In State v. Grant, 531 So.2d 1121, 1123-1124 (La.App. 4th Cir. 1988), this court stated:
It is well settled that counsel must stated the basis for his objection when making it and point out the specific error which the trial court is making. An assignment of error reserved to a trial court ruling where there is no basis for the objection stated and no error pointed out presents nothing for an appellate court to review. La.C.Cr.P. art. 841; State v. Williams, 374 So.2d 1215 (La. 1979); State v. Powell, 325 So.2d 791 (La.1976); State v. Salgado, 473 So.2d 84 (La.App. 5th Cir.1985), writ denied 478 So.2d 1233 (La.1985).
Therefore, the failure to state the basis for the objection at trial should preclude appellate review; but, in the event that the panel deems that defendant adequately preserved this issue for appellate review, the merits of this assignment of error will be addressed.
La.C.E. art. 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La.C.E. art. 402 provides that all relevant evidence is admissible; but, La.C.E. art. 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. In determining the relevance of evidence, much discretion is afforded the trial judge. State v. Stowe, 635 So.2d 168 (La.1994).
In State v. King, 604 So.2d 661 (La.App. 1 Cir.1992), the defendant objected to the admission of a recording of the first two *147 minutes of a 911 call on the grounds that the playing of the tape was unnecessary and repetitive because the persons whose voices were recorded on the tape were witnesses. The defendant further argued that the State was trying to gain the sympathy of the jury by playing the tape and that the prejudicial nature of the tape outweighed its probative value. The First Circuit held that the trial court did not err in admitting the edited version of the tape because that portion of the recording consisted of the basic report of the crime, including the number of shooting victims, the location of the incident, the efforts of the 911 personnel to calm the callers down, and a description of the perpetrators. The court noted that this portion of the tape also included the understandable excitement and emotional trauma from the occurrence in the voices of the callers. The remaining twelve minutes of the tape that was not played for the jury including first aid instructions from the 911 personnel, assurances from the 911 personnel that help was on its way, and crying and sobbing by the callers. The court stated that the tape was highly relevant in light of the defendant's attack on the credibility of the eyewitnesses and the alleged defect in their capacity to perceive the facts at the time of the shootings due to their alleged use of alcohol and/or drugs. The court further stated that the probative value of the tape clearly outweighed any danger of unfair prejudice.
The tape in question is approximately four minutes long, and Craft can be heard asking the 911 operator to send the police because "a girl" was dead at 2629 Louisa. He also told the operator that "a dude" had come in his house and shot her. Other parts of the conversation consist of Craft's being asked by both the 911 operator and EMS personnel where the victim had been shot and for the apartment number. He was told to calm down. He also stated that he was coming down the street when he saw the dude leave his house and get on a bike, and he repeated that the woman was dead.
It does not appear that the trial court abused its discretion in admitting the 911 tape. It was relevant to show that the perpetrator was seen leaving the scene on a bicycle. Moreover, its probative value was not outweighed by any unfair prejudice to defendant; specifically, Craft's emotional and excited statements were not of a nature to so inflame the jury that it found defendant guilty without regard to the other evidence presented. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
In his fourth assignment of error, defendant complains that the trial court erred in dismissing a juror in the middle of the trial because the State failed to show that the juror was incompetent to serve as required by La.C.Cr.P. art. 796. A review of the trial transcript shows that on the second morning of trial, the trial judge stated that he had been told by a deputy that one of the jurors was crying because her husband's parole had been revoked. The trial judge added that the juror, Gail Ducros, stated that she did not think it was a problem and that she could still serve as a juror. The prosecutor stated that during voir dire, he had asked every juror if a family member or close friend had ever been convicted of a crime and that he did not remember Ms. Ducros saying anything about her husband being on parole. Ms. Ducros was then taken to the judge's chambers and questioned. She stated that her fiancé's, not her husband's, parole had been "violated." She further stated that he had been on parole for aggravated rape; and, when asked why she had not said anything about it during voir dire when the prosecutor asked the jurors if they, a family member, or close friend had been convicted or accused of a crime, she responded that she thought it meant only her. She admitted being upset, but denied that she would hold the revocation against the State. After Ms. Ducros left the judge's chambers, the *148 State asked that she be excused from the jury because he had cut other prospective jurors who had admitted during voir dire that family members had been convicted of a crime. The trial judge dismissed Ms. Ducros after determining that the State had not exercised all of its peremptory challenges. Defendant objected to the dismissal of Ms. Ducros.
La. C.Cr.P. art. 795(B)(1) provides that peremptory challenges shall be made before the swearing of the jury panel. The information disclosed by the juror on the second day of trial, while revealing a potential source of bias, did not necessarily provide the State grounds for a cause challenge. The trial judge could not, at that stage of the proceedings, properly grant the State one of its peremptory challenges remaining at the close of jury selection. Nevertheless, the result reached by the trial court was authorized by law. A trial judge has the discretion to replace a juror with an alternate upon finding that the juror has "become unable to perform or disqualified from performing" his or her duty. La.C.Cr.P. art. 789. In the present case, the trial court found that the juror had failed to reveal the potential source of bias during voir dire examination despite questions specifically designed to elicit the information as an aid to the state's exercise of its peremptory and cause challenges. Although conceding that the juror may have misunderstood the question, the court expressed doubts about the candor and veracity of the juror, who swore an oath before submitting to voir dire examination, La.C.Cr.P. art. 786, and who, upon selection to the panel, had also sworn to "try the case in a just and impartial manner ... and to render a verdict according to the law and the evidence." La. C.Cr.P. art. 790. Under these circumstances, removing the juror (if not expressly disqualifying her) because of doubts raised by her lack of candor under oath about her competency to serve impartially, and replacing the juror with the alternate, represented the proper exercise of the trial court's discretion. See State v. Fuller, 454 So.2d 119, 123 (La.1984); State v. Derouselle, 99-3283 (La.4/28/2000) 761 So.2d. 1269. This assignment of error has no merit.

PRO SE ASSIGNMENT OF ERROR NO. 1
In this pro se assignment of error, defendant complains that the State withheld the following exculpatory evidence: a statement given by Charles Craft to the police after the shooting and a report containing a statement from Simone Segura.
The suppression of evidence that is favorable to a defendant upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence is material, hence discoverable, if there is a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed to the defense. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Evidence that the government has failed to disclose to the defendant is considered collectively, not item-by-item, in determining whether the materiality requirement of a Brady violation has been satisfied. Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819.
As to the statement given by Craft, a review of the trial transcript shows that the statement was turned over to defendant. It should also be noted that the trial court conducted an in camera inspection of the District Attorney's file as requested by the defendant at the end of the hearing on the motion to suppress the identification held 24 October 1996. The State also filed a notice of Brady material, namely that Officer Wellington Beaulieu had been approached by several people in the area who stated that Kerry was the *149 name of the subject who had shot Ms. Taylor. Defense counsel did not attempt to examine Craft about the contents of the statement. As to the evidence concerning Simone Segura, a review of the report in question states that Officer Beaulieu had been told by an unidentified person that the victim had been shot by someone named Kerry and that Kerry had been seen with a female named Simone shortly before the shooting. The report further states that Officer Zenon met with Simone Segura and that she told him that a man on a bicycle rode up to her and asked her if she had seen Sandra Taylor. When she told him, "No" he rode off; and, the report further stated that she was to contact the police when she found out the man's name.
Defendant asserts that Simone Segura could have been useful to the defense because she could have verified that he did not go to the victim's house with her. Defendant's assertion that Ms. Segura's testimony would have been exculpatory is speculative. All that can be said of her statement in the police report is that like Dana Duncan and Charles Craft she too was asked the whereabouts of Sandra Taylor. The outcome of the trial would not have been different had this evidence been disclosed to the defense prior to trial. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 2
In his second pro se assignment of error, defendant complains that the State knowingly allowed perjured testimony, namely that of Charles Craft, to go before the jury without being corrected. Defendant asserts that Craft lied at trial about his drinking on the day of the murder. As support for this allegation, defendant points to excerpts from a statement Craft gave to the police after the shooting. In that statement, Craft said, "Yes" when asked if he used drugs; and, when asked if he had used drug that day, Craft answered, "No." He further stated that he had been drinking wine all evening because he did not have any money. At trial, Craft said, "No" when asked if he had done cocaine around the time of the shooting although he admitted using drugs when he was dating the victim. He was later asked the following:
Q Were you drinking the night
A No, I wasn't.
Q of the murder?
A No, I wasn't.
Q Were you drinking right before or during the lineup?
A No, I wasn't. I had been earlier that morning, that day.
Q You had been drinking earlier?
A Earlier that day. But Sunday evening I don't drinkSunday evening, cause [sic] I have to go to work the next morning, that Monday.
It is not clear from Craft's testimony that his testimony totally contradicted his statement to the police. The day of the shooting was a Sunday; and, according to the police report, the lineup was shown to him on Friday, 26 January. Thus, his saying that he had been drinking earlier that day and referring to that day as Sunday appears to be an admission that he had been drinking the day of the shooting, not that he had been drinking the day of the lineup. Although the time of day is inconsistent, this does not appear to be perjury. This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 3
In this pro se assignment of error, defendant complains that the State used other crimes evidence without holding a Prieur hearing, namely the admission of testimony by Officer Shelita Butler that Sandra Taylor had been an informant whose information led to the conviction of Carmella Brown. Defendant argues that the State intended to show that a "hit" was put out on the victim because of the information about Ms. Brown, and because the State failed to connect him to Ms. Brown, the State's accusations went *150 beyond the scope of the evidence and constituted irrelevant other crimes evidence. A review of the trial transcript shows that no objection was made to Officer Butler's testimony; therefore, appellate review of this issue is precluded. La.C.Cr.P. art. 841.

PRO SE ASSIGNMENT OF ERROR NO. 4
In his fourth and final pro se assignment of error, defendant complains that actions by the State, namely the State's withholding of exculpatory evidence, rendered his counsel ineffective. He does not assert that his counsel was ineffective for reasons independent of the State's actions. As the issue of the State's withholding of exculpatory evidence has already been discussed in defendant's first pro se assignment of error, there is no need to repeat it.
CONVICTION AND SENTENCE AFFIRMED.