I,WALTZER, Judge.
This opinion involves Fred Tapp’s second appeal of his convictions and sentences for various armed robberies.
*1218 STATEMENT OP THE CASE
On 9 June 1994, Tapp was charged by bill of information with two counts of attempted armed robbery in violation of LSA-R.S. 14:27(64), six counts of armed robbery in violation of LSA-R.S. 14:64, and one count of second degree kidnapping in violation of LSA-R.S. 14:44.1.[1] At his arraignment on 1 July 1994, Tapp entered pleas of not guilty to all counts. Discovery and suppression hearings were held on 20 November 1995 and 10 February 1996. The trial court denied Tapp’s motions to suppress statement, evidence and identification.
On 10 April 1996, the State severed two counts of armed robbery and proceeded to trial on the other four counts of armed robbery, two counts of attempted armed robbery and one count of second degree kidnapping. On 12 April 1997, after a three-day jury trial, Tapp was found guilty as charged on the four counts of armed robbery and one count of second degree kidnapping. He was found guilty as charged on one count of attempted armed robbery and found guilty |?of attempted first degree robbery on the other count. At the multiple bill and sentencing hearing held on 22 April 1996, Tapp admitted to the allegations of the multiple bill. He was sentenced as a third offender on each offense. The trial court sentenced Tapp to serve thirty-five years at hard labor without benefit of parole, probation or suspension of sentence on the attempted first degree robbery conviction and the attempted armed robbery conviction. Tapp was sentenced to serve twenty years at hard labor without benefit of parole, probation or suspension of sentence on the second degree kidnapping charge. The trial court also sentenced Tapp to serve seventy years at hard labor without benefit of parole, probation or suspension of sentence on each charge of armed robbery. The sentences were to run concurrently.
On 19 November 1997 this Court affirmed Tapp’s convictions, but reversed the multiple bill adjudication and remanded for a new multiple bill hearing and sentencing based on the finding of an error patent.[2] State v. Tapp, 96-2201, unpub., 704 So.2d 992 (La.App. 4 Cir. 11/19/97).
On 11 March 1998 Tapp pled guilty to the multiple bill, charging him as a multiple offender on the armed robbery charged in count three. As to count three, the trial court sentenced him as a third offender to seventy years at hard labor without benefit of parole, probation, or suspension of sentence. As to count one, attempted first degree robbery, the trial court sentenced Tapp to twenty years at | shard labor without benefit of parole, probation, or suspension of sentence.[3] The *1219 trial court then sentenced him as follows: as to count two, twenty years at hard labor without benefit of parole, probation, or suspension of sentence; as to count four, thirty-five years at hard labor without benefit of parole, probation, or suspension of sentence; as to count five, seventy years at hard labor without benefit of parole, probation, or suspension of sentence; as to count eight, seventy years at hard labor without benefit of parole, probation, or suspension of sentence; and as to count nine, seventy years at hard labor without benefit of parole, probation, or suspension of sentence. The sixth and seventh armed robbery counts were severed from the others for trial. On 24 October 1996 the State nolle prosequied those two counts.
On 30 June 2000 Tapp’s attorney filed an errors patent brief and a motion to withdraw as counsel of record. On 20 December 2000 Tapp filed a pro se supplemental brief re-urging the four assignments of error raised in appeal, 96-KA-2201. Tapp assigned as the fifth error that the minute entry and commitment order showing a seventy year sentence on all the armed robbery counts was being used to compute his time even though the original sentencing transcript indicated that he was sentenced to only seven years on counts three, five, eight, and nine. He argued that the harsher sentences imposed on 11 March 1998 should be corrected to reflect the original sentences imposed on 22 April 1996.
|4On 20 December 2000 this Court issued an order in which it noted that the brief filed by appellate counsel in the original appeal, 96-KA-2201, did not comply with State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241, and Tapp had re-urged his original assignments of error. In the interests of judicial economy, this Court ordered that the scope of this appeal be expanded to include Tapp’s conviction in addition to his sentencing.
On 20 February 2001 Tapp’s new counsel filed a supplemental brief in which he declared that he had reviewed Tapp’s pro se claims in his original appeal, 96-KA-2201, and that he had reviewed the original record and found no non-frivolous issues to raise. Counsel also filed a motion to withdraw as counsel of record. On 2 March 2001 Tapp filed a second supplemental pro se brief and added an additional argument under his original assignment of error number three, sufficiency of the evidence.
STATEMENT OF THE FACTS[4]
About eight-thirty in the evening on 2 April 1994, Renee Ewing was walking in the 7900 block of Fig Street on her way home when a stranger grabbed her by the arm. She turned and looked at the subject. He had a gun pointed at her. He forced her to walk to a side street. After she told him that she did not have any money, he searched her. The subject then told her to continue walking. The subject fled in the opposite direction. Ewing ran to a nearby service station and called 911. Ewing described the perpetrator as a dark-skinned African-American male, 5'8"-5'll", and weighing 160-180 pounds. The perpetrator had a broad nose and a few gold teeth. The perpetrator had a bad body odor and was wearing a red |BSan Francisco starter jacket with a white shirt underneath. Ewing identified Tapp as the perpetrator later that evening after he was apprehended. Ewing positively identified Tapp at trial as the perpetrator.
On the same evening, Simone Cherry, Takia Payne and Shondrell Perilloux were walking from the Carrollton Shopping *1220 Center to Payne’s grandmother’s house. As they approached Apricot Street, a stranger approached them from behind and put a gun to Payne’s back. The subject told them not to turn around and to walk slowly. He told them to give him their money. Cherry and Perilloux told him that they did not have any money. The subject took Perilloux’s gold rope earrings that she was wearing. Payne gave him the money she had with her, approximately $55.00. The subject told the girls to continue walking. He then fled the area. The girls went to Payne’s grandmother’s house and called the police. While the girls were at the house, they heard police sirens. They followed the sirens and located the police. The girls informed the officers that they had been robbed. The girls described the perpetrator as an African-American male with gold teeth and a red San Francisco starter jacket. They noted the perpetrator had a broad nose. Payne and Cherry were able to identify Tapp as the perpetrator that evening. All three girls identified Tapp at trial as the perpetrator.
At approximately 8:20 p.m. on 2 April 1994, New Orleans Police Officer Simon Hargrave responded to a call of an attempted armed robbery in the 3100 block of South Carrollton. Officer Hargrave met with Renee Ewing at the Shell Service Station at the intersection of Carrollton and Earhart. Ewing provided the officer with a description of the perpetrator. He broadcast this description over the | (¡police radio. As he was taking Ewing home, he learned that a subject matching the description was seen in the area of the 2000 block of South Carrollton. Officer Har-grave relocated to that area with Ewing. As the officer approached the area, he observed an African-American male wearing a red San Francisco starter jacket jump over a fence in the 2000 block of South Carrollton. The officer exited the vehicle and attempted to pursue the subject. Once the subject jumped the fence, the officer returned to his vehicle and drove to the intersection of South Carroll-ton and Apricot to block off an escape route. Several other police units arrived to assist in blocking the area. A canine unit was also requested. A yard by yard search of the area was conducted. Tapp was eventually apprehended. At the time Tapp was apprehended, he had discarded the starter jacket. The jacket was found in one of the yards searched. Ewing made a positive identification of Tapp as the perpetrator after his apprehension. Officer Hargrave identified Tapp in court as the person he saw jumping over the fence.
Nicole Johnson and her boyfriend, Der-win Sylvester, were walking home from the Carrollton Shopping Center on the evening of 2 April 1994. They were walking on South Carrollton towards Claiborne Avenue when a subject approached them with a gun and told them to give him their money. Johnson and Sylvester gave the subject their money, totaling $102.00. The subject told them to walk down Pritchard Place. The subject then ran the other way. The couple flagged down a police officer and informed him of the robbery. The couple saw the perpetrator again at the scene of the incident when the officer took the couple back to the scene to complete the report of the incident. The couple informed the officer that the subject was the person who robbed them. The officer attempted to |vapprehend the subject. The subject drew a gun on the officer and started running. The officer pursued the subject but was unable to catch him. The couple described the perpetrator as a dark-skinned Afro-American male with a broad nose and two gold teeth. He was wearing shorts, a San Francisco starter jacket, socks and tennis shoes. Johnson and Sylvester made a photo identification of Tapp several days after the incident. *1221 They both identified Tapp at trial as the perpetrator.
New Orleans Police Officer Kevin Balan-cier participated in the apprehension and arrest of Tapp on the evening of 2 April 1994. He assisted in sealing off the 8100 block of Pritchard Street. Officer Balancier was in the police vehicle when Officer Darren Hartman advised Tapp of his rights. Officers Balancier and Hartman were speaking about the weapon and their concern that a child might find the weapon when Tapp stated that he would show them where he hid the weapon. Tapp pointed to a raised house in the 8100 block of Pritchard and stated that the weapon was under the house. Officer Balancier went under the house but could not find the weapon. Tapp then told the officers that they would not be able to find the gun as it was a black gun and he had dug a hole. Officer Balancier also conducted the photographic lineups with Nicole Johnson and Derwin Sylvester on 18 April 1994. Both Johnson and Sylvester made positive identifications of Tapp as the perpetrator of the armed robberies.
Officer Darren Hartman also assisted in the investigation of the armed robberies. He spoke with Takia Payne, Simone Cherry and Shondrell Perilloux. The victims initially approached Sgt. Radler and informed him that they were victims of an armed robbery. Radler asked Hartman to obtain information about the robbery from the victims. The victims gave the officer a description of the | ¡¡perpetrator. Later that evening, the victims, Takia Payne and Simone Cherry, made one-on-one identifications of Tapp as the perpetrator. After Tapp was apprehended, he was placed in Officer Hartman’s vehicle. The officer advised Tapp of his rights and obtained general information from Tapp for the arrest report. Tapp indicated that he understood his rights. The officer asked Tapp if he wished to make a statement. Tapp replied in the negative. Officer Hartman was in the vehicle when Tapp made the statement to Officer Balancier that he would show the officers where he hid the weapon. The officers did not find the weapon that evening. However, a weapon was found the next day. The weapon was on the roof of a shed where Tapp had been found the previous evening.
Officer Freddie Johnson responded to a call of an armed robbery in the 1700 block of Burdette Street. The officer met with Nicole Johnson and Derwin Sylvester. The couple informed him that they had been the victims of an armed robbery in the 2800 block of South Carrollton Avenue. They provided the officer with a description of the perpetrator. The officer was driving the couple back to the scene of the robbery when the couple noticed the perpetrator on the street. The officer observed the subject was wearing a San Francisco starter jacket. The officer informed the dispatcher of the subject’s whereabouts and asked for assistance. Officer Johnson attempted to pursue the subject but the subject ran in back of a house in the 2800 block of South Carrollton Avenue. The officer, with the assistance of Officer Hargrave, began to secure the area to prevent the subject’s escape. Officer Johnson also requested a canine unit. The officer noticed a vehicle parked in the 8100 block of Pritchard Place. After running the vehicle identification number, the officer learned that the vehicle was registered to a Lisa[flTapp.
Officer Anthony Lanasa, Jr., assisted Officers Eugene Frischhertz and Bruce Shaw with the canine unit. Lanasa followed Frischhertz and the dog through the yards they were searching. The dog found the starter jacket in the yard of 8124 Pritchard Place. The dog also indicated the subject was hiding in a high place in that yard. The residents allowed Officer *1222 Lanasa to go in the house and view the shed from a second story bedroom window. The officer saw Tapp on top of the shed roof. The officer then notified the other officers of Tapp’s location. As the officer exited the residence, Tapp jumped off the shed roof and fled through an adjacent yard. Officer Lanasa returned to his vehicle and drove around the block to prevent Tapp’s escape. Tapp was subsequently apprehended by the police dog and Officer Frischhertz.
Officer Chana Pichón of the New Orleans Police Department Crime Laboratory dusted the vehicle registered to Lisa Tapp for fingerprints. Two partial prints were found. Officer Millard Green of the Crime Laboratory assisted Officer Hartman in the retrieval of the weapon on 3 April 1994. Officer Green collected the gun from the shed roof and took photographs of the area. No fingerprints were found on the weapon.
Tapp denied any involvement in the robberies. He stated that at the time of his arrest, he was walking to his vehicle located at the intersection of South Carrollton Avenue and Pritchard Place. Tapp testified he had taken his girlfriend shopping on 2 April 1994. His car began overheating while they were on Canal Street. He put water in the radiator and took his girlfriend home. Tapp stated that after he left his girlfriend’s house, he was going to visit his grandmother for a |inwhile and then return to his girlfriend’s house. However, the car started to overheat again when he turned onto South Carrollton Avenue. He walked to the gas station at the intersection of South Carrollton and Claiborne. However, the gas station did not have any cans to hold water. Tapp then walked to Burger King. He decided to eat while the car cooled down. About 11:00 p.m., he left Burger King and returned to the vehicle. As he approached his vehicle, he saw several police officers standing near his vehicle. When Tapp reached his vehicle, the officers handcuffed him and threw him to the ground. Tapp stated the officers hit him and allowed a police dog to attack him. Tapp contended he sustained a gash above his eye. He acknowledged two prior convictions for simple burglary and purse snatching.
Karen Carter, Tapp’s parole officer, testified that she saw Tapp on 11 April 1994 at Orleans Parish Prison. She stated that she vaguely recalled Tapp had a gash on his forehead. Tapp told her the police had abused him.

ERRORS PATENT

A review of the record reveals no error patent.

ASSIGNMENT OF ERROR NUMBER 1

Tapp re-urges that his constitutional right to remain silent was violated during his initial interrogation. In appeal 96-KA-2201 Tapp argued that his right to remain silent was violated, although he informed the officers he wished to remain silent. Tapp contends that the police re-instituted interrogation about thirty minutes after he informed them he had nothing to say. During this interrogation, Tapp claimed that he was forced to tell the officers where the gun was located.
Tapp made the statement at issue while he was sitting in the back seat of | n Officer Hartman’s vehicle. Officer Hartman had advised Tapp of his rights, and Tapp informed the officer he wished to remain silent. Officers Hartman and Balancier were in the vehicle discussing the search for the weapon. Officer Balancier told Officer Hartman that he hoped the weapon was found before a child found it. Tapp voluntarily told the officers he would show them where the gun was located. Tapp pointed to a raised house in the 8100 block of Pritchard and stated that the weapon was under the house. Officer Balancier *1223 searched under the house but could not find the weapon. Tapp then told the officers that they would not be able to find the gun as it was a black gun and he had dug a hole. At trial, Tapp denied making any such statements to the police officers.[5] In the appeal opinion in 96-KA-2201, this Court discussed that argument and found it lacked merit.
In State v. Koon, 96-1208, pp. 6-7 (La.5/20/97), 704 So.2d 756, 762-63, the Louisiana Supreme Court discussed a similar argument:
Once a suspect in custody expresses a desire, at any stage in the process, to deal with the police only through counsel, all questioning must cease and the accused is not subject to further interrogation until counsel has been made available to him, unless he initiates further communication, exchanges or conversation with the police and validly waives his earlier request for counsel. Edwards v. Arizona, supra, 451 U.S. at 484-485, 101 S.Ct. at 1885; Miranda v. Arizona, 384 U.S. 436, 440-445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); State v. Abadie, 612 So.2d 1 (La.1993),cert. denied, 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993); State v. Lee, 524 So.2d 1176 (La.1987). Miranda and Edwards are prophylactic rules designed to protect an accused against the inherently compelling pressures of custodial interrogation, whether by police badgering, overreaching or subtle but repeated efforts to wear down an accused’s resistance and make him change his mind. Oregon v. Bradshaw, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983); Wyrick v. Fields, 459 U.S. 42, 45-46, 103 S.Ct. 394, 395, 74 L.Ed.2d 214 (1982) (per curiam); Rhode Island v. Innis, 446 U.S. 291, 298-299, 100 S.Ct. 1682, 1688-1689, 64 L.Ed.2d 297 (1980). When a defendant exercises his privilege against self-incrimination, the validity of any subsequent waiver depends upon whether police have “scrupulously honored” his right to cut off questioning. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). However, police are not obliged to ignore spontaneous and unsolicited statements by someone in custody, as long as those statements do not result from police-initiated custodial interrogation or questioning “reasonably likely to elicit an incriminating response.” State v. Ross, 95-1798 (La.3/8/96), 669 So.2d 384, 386 (per curiam). Nor does a previous assertion of the right to counsel bar admission of such statements. Id.
Whether the authorities have “scrupulously honored” an accused’s right to silence is determined on a case-by-case basis under the totality of the circumstances. State v. Brooks, 505 So.2d 714, 722 (La.1987); State v. Harper, 430 So.2d 627, 633 (La.1983). When an accused invokes his Miranda right to counsel, the admissibility of a subsequent confession or incriminating statement is determined by a two-step inquiry: (1) did the accused initiate further conversation or communication; and (2) was the purported waiver of counsel knowing and intelligent under the totality of the circumstances. State v. Abadie, supra at 5-6.
Id. pp. 6-7, 704 So.2d at 762-63. In Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the defendant had declared that he did not want to talk to the officers until he had spoken to his attorney. As three officers were transporting him to the station, two of the *1224 officers began to talk to each other about their concern that a handicapped child (nearby there was a school for handicapped children) might find the shotgun used to rob and kill one taxicab driver and rob another. The defendant then spontaneously told the officers to turn the police car around in order for him to show the officers where he had hidden the shotgun. The U.S. Supreme Court held that there was nothing to show that the officers should have known that the defendant would suddenly be moved to make a self-incriminating response especially when the entire conversation consisted of no more than a few offhand remarks. Id. See also State v. Ross, 95-1798 (La.3/8/96), 669 So.2d 384.
Tapp had been advised of his rights and informed the officers of his decision not to speak with them. The officers did not attempt to interrogate Tapp. The testimony indicates that Tapp’s statements were spontaneous in reaction to the conversation between Officer Hartman and Officer Balancier. Tapp made the statements on his own and without any prompting by the police officers. Thus, the trial court did not err when it denied Tapp’s motion to suppress the statements. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

Tapp argues that the one-on-one identifications made by Renee Ewing, Takia Payne and Simone Cherry were suggestive and unreliable and should have been suppressed by the trial court.
In State v. Simmons, 99-1154, pp. 8-9 (La.App. 4 Cir. 12/6/00), 779 So.2d 856, 861-62, this Court discussed the pertinent law relating to suggestive identifications:
The law regarding the admissibility of identification testimony was recently summarized in State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000):
As a general matter, the defendant has the burden of proof on a motion to suppress an out-of-court identification. La.Code Crim. Proc. art. 703(D). To suppress an identification, a defendant must first prove that the identification procedure was suggestive. State v. Prudholm, 446 So.2d 729, 738 (La.1984). An identification procedure is suggestive if, during the procedure, the witness’ attention is unduly focused on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La. 1980). However, even when suggestiveness of the identification process is proven by the defendant or presumed by the court, the defendant must also show that there was a substantial likelihood of | uRiisidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d at 738.
The Supreme Court held in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977), that despite the existence of a suggestive pretrial identification, an identification may be permissible if there does not exist a “very substantial likelihood of irreparable misidentification.” Under Manson, the factors which courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of misidentification include: 1) the witness’ opportunity to view the criminal at the time of the crime; 2) the witness’ degree of attention; 3) the accuracy of his prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation. Id.
98-1673, at pp. 20-21, 750 So.2d at 932.
*1225 One-on-one identifications generally are not favored, but they are permissible when they are justified by the overall circumstances, particularly when the accused is apprehended within a relatively short period of time after the crime has been committed and has been returned to the crime scene. State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132; State v. Hunter, 92-2535 (La.App. 4 Cir. 4/13/95), 654 So.2d 781. Such identifications have been upheld because prompt confrontation between a defendant and victim promotes fairness by assuring the reliability of the identification-while the victim’s memory is fresh-and the expeditious release of innocent suspects. State v. Short, 96-2780, p. 5 (La.App. 4 Cir. 11/18/98), 725 So.2d 23, 25. A one-on-one identification is not suggestive per se. State v. Martello, 98-2066 (La.App. 4 Cir. 11/17/99), 748 So.2d 1192, writ denied, 2000-0240 (La.12/15/00), 777 So.2d 475. This Court has upheld trial court decisions to deny motions to suppress identifications when a one-on-one confrontation was involved, the victim was the only witness, and the defendant was |1Rthe only person presented for identification. Id. at 1198.
The victims made separate identifications of Tapp shortly after he was apprehended and within a few hours of the crimes. The victims identified Tapp while he was standing near a police vehicle between police officers. Each victim was positive of her identification of Tapp as the perpetrator. The victims and the police officers all testified that no force or coercion was used to obtain the identifications. Furthermore, each victim gave a similar description of the perpetrator and identified Tapp at trial as the perpetrator. All victims described the perpetrator as a dark-skinned African-American male with a broad nose and gold teeth, who was wearing a red starter jacket. Each victim also stated that she had sufficient time and opportunity to view Tapp during the commission of the crime. Each victim was only inches away from the perpetrator and looked directly into the perpetrator’s face. Each robbery lasted several minutes. The evidence reflects that the one-on-one identifications made by the victims were not suggestive or unreliable. The trial court did not err when it denied Tapp’s motion to suppress the identifications. This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE

In appeal 96-KA-2201 Tapp argued that the State was not able to prove beyond a reasonable doubt his identity as the perpetrator of the alleged offenses. He argued that the one-on-one identifications should have been suppressed; therefore, the State did not have sufficient evidence to prove his identity as the perpetrator. In his second supplemental brief filed in 2000-KA-2279, Tapp additionally argues misidentification based on the fact that Officer Lanasa’s testimony was inconsistent as to the description of the perpetrator’s jacket, and he 11filost sight of the perpetrator during the chase.
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier or [sic] fact would do. If *1226 rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witness or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
State v. Boudreaux, 2000-0073, p. 5 (La. App. 4 Cir. 12/20/00), 777 So.2d 596, 598-99, (quoting State v. Ragas, 98-0011, pp. 13-14 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, 106-107).
The one-on-one identifications were not suggestive or unreliable and were properly admitted. The victims’ testimony concerning their identifications of Tapp shortly after the crime as the perpetrator was properly considered by the jury in | ^determining whether the State had met its burden of proof. Renee Ewing, Takia Payne and Simone Cherry testified that they were positive of their identifications of Tapp as the perpetrator. The State also produced testimony from Derwin Sylvester and Nicole Johnson concerning their positive photographic identifications of Tapp several days after the crime. At trial, all the victims positively identified Tapp as the perpetrator. Several officers, who had observed Tapp prior to his apprehension, also positively identified Tapp.
Officer Anthony Lanasa testified that the dog located the mostly red San Francisco 49-ers jacket (described by the first officer pursuing the perpetrator) in a yard, and then the dog indicated that the perpetrator was hiding on top of the nearby garage. Officer Lanasa spotted a black male wearing an eight-ball jacket (a designer multi-colored jacket with a pool ball on the back) on top of the garage. After the suspect jumped from the garage and ran, Officer Lanasa lost sight of him when he was at the back of the house on the other side of the block. At that point the officer knew that he could not catch the suspect and drove his car around the block in an attempt to secure the perimeter. Officer Lanasa saw that the suspect was still wearing the eight-ball jacket when he was apprehended. The officer’s testimony indicated that Tapp at first was wearing one jacket (the red 49-ers jacket), which was discarded in a yard; but he was later wearing the multi-colored eight-ball jacket. The officer’s testimony was not damaging to the State’s case. The State had introduced testimony from the victims concerning their descriptions of the perpetrator as well as their positive identifications of him. Those descriptions of the perpetrator were very similar. Such testimony was sufficient for the jury to conclude, beyond a reasonable doubt, that Tapp was the perpetrator of the crimes. | 1sThis assignment lacks merit.

*1227
ASSIGNMENT OF ERROR NUMBER FOUR

Tapp contends that the trial court erred by denying his motion in limine concerning the admissibility of the weapon. Tapp argues that the gun was not sufficiently identified to link the weapon to the alleged offenses and was not relevant.
LSA-C.E. art. 401 defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” LSA-C.E. art. 402 provides that all relevant evidence is admissible; however, LSA-C.E. art. 403 provides that relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time.” Much discretion is afforded the trial court in determining the relevance of evidence. State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168; State v. Derouselle, 97-2590 (La.App. 4 Cir. 8/30/00), 769 So.2d 141.
To be admissible, demonstrative evidence must be identified and authenticated. La. C.E. art. 901. As a foundation for admitting demonstrative evidence, it must be established that the object sought to be introduced is more probably than not connected with the case. State v. Tatum, 506 So.2d 584, 589 (La.App. 4 Cir.1987); State v. Matthews, 95-1245 (La.App. 4 Cir. 8/21/96), 679 So.2d 977, 984, writ denied, 96-2332 (La.1/31/97), 687 So.2d 403. A lack of positive identification of demonstrative evidence or its chain of custody goes to the weight of the evidence, not to its admissibility, and the connection of that evidence to the case is a factual matter to be determined by the trier of fact. State v. Lewis, 452 So.2d 720, 726 (La.App. 4 Cir.1984), vacated in part, 457 So.2d 1187 (La.1984).
State v. Guss, 99-1817, p. 11 (La.App. 4 Cir. 12/6/00), 775 So.2d 622, 627-28.
| ^Officer Hartman testified that the weapon was found the day after Tapp’s arrest. The weapon was found on the garage or shed roof where Officer Lanasa saw Tapp the prior evening. In addition, the red San Francisco starter or 49-ers jacket was found in the yard by the garage. Furthermore, the weapon found was a dark-colored .38 automatic. All of the victims testified that the weapon used by the perpetrator was a dark-colored automatic. Such testimony was sufficient to indicate that the weapon was relevant to the alleged offenses. While the testimony did not specifically indicate that the weapon found was the weapon used in the robberies, the testimony suggested that it was more probable than not that the weapon was used in the crimes committed. Any lack of positive identification of the weapon went to the weight of the evidence, not its admissibility. Therefore, the trial court did not err when it denied Tapp’s motion in limine. This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE

Tapp assigned this error only in the present appeal, 2000-KA-2279. He argues that the minute entry, docket master entry, and commitment order indicate that he was originally sentenced to seventy years on counts three, five, eight, and nine for armed robbery; however, the official transcript, which controls if there is a discrepancy, indicates that he received sentences of seven years. Therefore, the trial court could not re-sentence him to the harsher sentences of seventy years as to those counts.
*1228 The 22 April 1996 sentencing transcript reflects that Tapp was sentenced to seven years on counts three, five, eight, and nine. The 22 April 1996 minute entry, docket master entry, and commitment order indicate that he was sentenced to |2nseventy years. After this Court reversed the multiple offender adjudication and remanded for a new hearing and sentencing, on 11 March 1998 a second hearing was held. Tapp pled guilty to the multiple bill alleging that he was a third offender as to count three, and he was sentenced to seventy years at hard labor without benefit of probation, parole, or suspension of sentence. Defense counsel noted that the transcript of the original sentencing indicated that Tapp was sentenced to only seven years. Counsel said: “Just out of an abundance of caution under Desdunes, I think you cannot do it — even though it may be an illegal sentence, an illegally lenient sentence.” The trial court then declared:
Desdunes spoke to two separate circumstances; one in which the sentencing judge is a[sic] around, available and still viable and the other in which the sentencing judge is no longer around, available or viable. And in the latter instance, the new judge is supposed to determine whether or not the sentencing judge originally, whether his intention was in some fashion to impose a sentence that was more lenient than the law would require. This judge, though, sentencing judge is still around and still viable and still, I think, still — I think still around. This sentencing judge is aware of the fact that the intent here was never to sentence Mr. Tapp in some fashion that would have been lenient or illegally lenient or in some fashion that would have deviated from the mandatory sentence and the minimum, mandatory sentence. This Court never intended to impose a sentence in that fashion, never did. The sentence that this Court intended to impose and in fact did impose in 1996, April 22, 1996, was seventy years. The sentence this Court imposed was seventy years even though the transcript says seven. The minute entry reflects seventy, and this Court’s memory reflects the same. Again, I am the same person I was then as I am now. I know that I never sentenced — my mouth never said seven years, Mr. Tapp, for that count or any count of the bill of information. My mouth never said seven years. This Court intended at all times to sentence Mr. Tapp to seventy years, never intended to sentence Mr. Tapp for that count or any other count to something that would have been a sentence in single digits. That never was the intent of this Court. Those words never came from this Court’s mouth. It never happened.
| ^Defense counsel noted two cases that hold that when there is a discrepancy between the minute entry and the transcript, the transcript prevails. The trial court stated:
I understand. But again, there is no discrepancy in terms of this Court’s memory. There is nothing faded in terms of my mind or my memory from the two years since this matter was held. There is nothing. I am comfortable in the knowledge or in the belief that if in fact the tapes of the sentencing were had and was [sic] looked at and listened to, what you would hear is this Court saying seventy years not seven. I am as comfortable as I can be with that.
In the appellant’s brief, counsel notes Tapp’s argument at the resentencing that the discrepancy must be resolved in favor of the transcript; however, counsel then states:
While counsel is correct in the law, it is clear from the record that the same judge who sentenced the appellant the *1229 first time was the same judge sentencing him again. The judge specifically addressed this issue by saying that he never intended to sentence the appellant to only seven years, but always fully intended to sentence him to seventy years. In so doing, the judge made several unequivocal statements on the issue. 99 R. p. 5. This is in effect a correction of the transcript as in error.
In State v. Sanders, 618 So.2d 904 (La. App. 1 Cir.1993), the First Circuit was faced with a sentencing error caused by the failure to give defendant credit for time served. The minute entry indicated that the court did award credit for defendant’s confinement prior to the imposition of sentence; however, the transcript did not contain such an award. Noting that the transcript should prevail, the court declared that if the trial court had not ruled on defendant’s motion for correction of sentence before rendition of the opinion, the trial court was ordered to correct the sentence and amend the commitment order. Id.
Appellate counsel focuses on the correct narrow issue. Although there are cases that hold that the transcript prevails when there is a discrepancy between the |gRminute entry and the transcript, State v. Brown, 97-2260 (La.App. 4 Cir. 10/6/99), 746 So.2d 643, that is not the correct focus. The original sentencing judge declared that the transcript was in error if it indicated that Tapp was sentenced to seven, not seventy years. The judge indicated that he sentenced Tapp to seventy years; that was his intent. At the re-sentencing on 11 March 1998 the trial court corrected the error in the 22 April 1996 transcript.
In light of the trial court’s clear statement that it sentenced Tapp originally to seventy years and any discrepancy in the transcript was an error, which the court corrected on 11 March 1998, this assignment lacks merit. Therefore, appellate counsel was correct when he concluded that there are no non-frivolous issues to be argued.[6]

Counsel’s Motion to Withdraw

Counsel complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir.1990). Counsel filed a brief complying with State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241. Counsel’s detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record. Counsel has moved to withdraw because he believes, after a conscientious review of the record, that there are no non-frivolous issues to be raised on appeal. Counsel has reviewed all available transcripts and has found no trial court rulings which arguably support the appeal. A copy of the brief was forwarded to Tapp, and this Court informed him that hej^had the right to file a brief on his own behalf. Tapp filed a pro se brief re-urging four assignments of error (originally raised in appeal 96-KA-2201), assigning as error the fact that the trial court re-sentenced him to seventy years at hard labor on the armed robbery counts when the original sentencing transcript indicated that he was sentenced to only seven years, and adding an argument relating to misidentification to his third assignment involving sufficiency of the evidence. None of his arguments have merit.
As in State v. Benjamin, all the pleadings filed in the district court, all minute *1230 entries of the district court proceedings, the bill of information and all transcripts contained in the appeal record were reviewed. Tapp was properly charged by bill of information with violations of LSA-R.S. 14:27(64), 14:64 and 14:44.1, and the bill was signed by an assistant district attorney. Tapp was present and represented by counsel at arraignment, all hearings, trial, and sentencing. The State proved every element of attempted first degree robbery, attempted armed robbery, armed robbery and second degree kidnapping beyond a reasonable doubt.

CONCLUSION

Tapp’s convictions and sentences are affirmed. Counsel’s motion to withdraw is granted.
CONVICTIONS AND SENTENCES AFFIRMED.

. The first two paragraphs of the statement of the case are taken mostly from this Court’s opinion in the Tapp's first appeal, State v. Tapp, 96-2201, unpub., slip op. at pp. 1-2, 704 So.2d 992 (La.App. 4 Cir. 11/19/97).

. The trial court had improperly sentenced the defendant as a third offender on each count charged. This Court cited State ex rel. Porter v. Butler, 573 So.2d 1106 (La. 1991), and concluded that the trial court should have sentenced the defendant as a multiple offender on only one of the convictions arising from each of the three criminal episodes involved in the charges: attempted first degree robbery and second degree kidnapping of Renee Ewing; two armed robberies and one attempted armed robbery of Takia Payne, Simone Cherry, and Shondrell Perilloux; and the two armed robberies of Nicole Johnson and Der-win Sylvester.

.The trial court noted that the prior thirty-five year sentence had been illegal; the maximum sentence for that crime was twenty years. As to this count and the rest of the counts, the trial court vacated the prior sentences and then sentenced the defendant. *1219 However, the court also noted that this Court had vacated all the sentences.

. The following facts were set out in the defendant’s unpublished appeal opinion in 96-KA-2201.

. The paragraphs setting out the argument and the relevant facts are mostly taken from the appeal opinion in 99-KA-2201. The same will be true for the other assignments of error.

. Counsel noted that the other possible issue would have been excessiveness of sentence. However, because no motion to reconsider sentence was filed after the original 1996 sentencing or the 1998 resentencing, counsel was precluded from raising the issue on appeal.