920 So.2d 884 (2005)
STATE of Louisiana
v.
Larry ADDISON.
No. 05-KA-378.
Court of Appeal of Louisiana, Fifth Circuit.
December 27, 2005.
*887 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Juliet Clark, Churita Hansell, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
On February 5, 2003, defendant, Larry Addison, was charged by bill of information with possession with intent to distribute marijuana in violation of LSA-R.S. 40:966(A) (count one) and with possession of a firearm, in violation of LSA-R.S. 14:95.1, having been previously convicted of possession of cocaine in violation of LSA-R.S. 40:967(C) (count two). Defendant pled not guilty to these charges on the following day.
On July 23, 2003, the trial court denied defendant's motion to suppress evidence. On this same day, count two of the bill of information was amended to charge defendant with possession of two guns. Defendant was re-arraigned and pled not guilty to the amended charge.
On January 6, 2004, defendant's motion to quash the bill of information was heard and denied. On this day, count two of the bill of information was amended from possession of firearms to the singular possession of a firearm, and count four was added to charge defendant with possession of a firearm located at 132 Fifth Street in Bridge City. Defendant was re-arraigned and entered a plea of not guilty as to all three counts. Also on this day, jury selection began for defendant's trial. On January 8, 2004, the jury returned a guilty verdict as to counts one and four. As to count two, defendant was found not guilty. The trial court later denied defendant's motion for new trial, motion for arrest of judgment and motion for post judgment of acquittal.
On February 2, 2004, for count one, possession with intent to distribute marijuana, defendant was sentenced to ten years incarceration in the custody of the Department of Corrections and was fined $10,000.00 plus court costs and a $20.00 jury fee. With regard to count three on the verdict form (count four of the bill of information), felon in possession of a firearm, defendant was sentenced to ten years in the custody of the Department of Corrections, without the benefit of probation, parole or suspension of sentence and was fined $2,000.00 plus costs. The trial court ordered this sentence to run concurrently with the sentence imposed for count one. Thereafter, the trial court denied defendant's motion to reconsider his sentence.
Defendant was granted an out of time appeal by an Order signed on January 14, 2005.

FACTS
Based on information received from a confidential informant (CI), on January 4, 2003, Agent Pat Digiovanni conducted an *888 investigation of illegal drugs on Wiegand Drive in Bridge City. According to the CI, an individual inside of a white Dodge pickup would be delivering a quantity of marijuana to a location on the 600 block of Wiegand Drive. The CI also provided a license plate number of the vehicle, a physical description of the driver and the passenger's first name, "Larry." As Agent Digiovanni arrived at the location at about 9:00 p.m., which was about thirty to forty-five minutes after receiving the information from the CI, he observed such a vehicle pulling off. The vehicle's license plate number was checked, and it was determined that the owner of the vehicle was Lionel Christophe.
The vehicle was stopped on Wiegand Drive. Deputy James Mattews, Deputy Kay Horn and Sergeant Sue McCartney were involved in the stop. After conducting a criminal history check on the passenger, defendant, and discovering an outstanding attachment for his arrest, defendant was arrested. After his arrest, defendant was searched by Deputy Mattews who found four bags of marijuana in his pants' pocket. Agent Digiovanni and Deputy Mattews identified defendant in court. No drugs were found on the driver of the vehicle.
The vehicle was subsequently searched. An ice chest was found inside the vehicle on the seat between the driver and the passenger, State's Exhibit 5. Inside this ice chest, which was ajar, was State's Exhibit 2B, a clear plastic bag which contained marijuana. In Christophe's vehicle, 193 grams of marijuana were found. A .45 caliber pistol in a nylon case was also found inside of the vehicle on the floorboard in arm's reach of defendant.
The CI informed Agent Digiovanni of the address of defendant's residence. Agent Digiovanni went to the address and obtained defendant's consent to search the residence. Defendant had a key to the residence in his pocket which was used to gain entry.
A search was performed of the residence and additional quantities of marijuana were found, as well as a cigar box with drug paraphernalia and paperwork addressed to defendant, a Hibernia Bank bag containing defendant's payroll stubs and letters addressed to defendant and a sawed-off shotgun wrapped in clothing in a laundry basket. In the bedroom, officers also found a box of sandwich bags similar to the ones found on defendant containing marijuana and a scale. Agent Digiovanni testified that these items were consistent with distribution and that they found nothing consistent with the use of marijuana in the vehicle or at the residence.
Deputy Mattews testified that he searched his vehicle once he got to the Bureau and when he lifted the backseat of his vehicle where defendant was sitting he found a small black baggie with green vegetative matter under the seat. Charles Kron, an expert in the field of analysis of controlled dangerous substances, analyzed substances in regards to this case and testified as to his findings. He explained that Specimen 1 consisted of four clear plastic baggies with green designs containing green vegetative material. This material tested positive for marijuana and contained a gross weight of 6.1 grams. Specimen 2 was one large plastic bag which contained seven smaller clear plastic bags containing vegetative material. Material from four bags picked randomly were tested and this material tested positive for marijuana and had a gross weight of 172.86 grams. He described Specimen 7 as a plastic see-through purse. Specimen 7A consisted of a plastic bag containing numerous empty plastic bags which were not analyzed. Specimen 7B consisted of a plastic bag containing vegetative material which tested positive for *889 marijuana and had a gross weight of 6.2 grams. Specimen 7C, a plastic bag containing four small Ziploc plastic bags each containing vegetative material, tested positive for marijuana with a gross weight of 6.36 grams. Specimen 10, a black clear plastic baggie with vegetative material, tested positive for marijuana and had a gross weight of 1.5 grams. He concluded that the gross weight of all the marijuana he received and analyzed was about 200 grams.
Lieutenant Bruce Harrison testified as an expert in the use, packaging and distribution of illegal narcotics. Lieutenant Harrison testified that the evidence he was shown in this case was consistent with possession with intent to distribute marijuana.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the officers' search of the house was illegal; therefore, the motion to suppress concerning the items gathered at the residence should have been granted. Specifically, defendant argues that the CI's statement that defendant lived at the Fifth Avenue residence was alone insufficient to justify the officers' search of the residence, especially since the CI's reliability was never established. Further, defendant argues a reasonable officer would have been put on notice that the residence was not defendant's and, therefore, defendant could not give permission for it to be searched.
The State responds that this assignment of error is without merit because it was clear that defendant possessed common authority over the premises, and at the time of his arrest had the key to the residence in his pocket. In addition, defendant voluntarily consented to the search of the residence. Finally, the State contends that inside a bedroom of the residence officers located paperwork which further confirmed his authority over the premises and exercise of dominion and control over the bedroom in which items were seized.
On July 23, 2003, after a hearing, the trial court denied defendant's motion to suppress the evidence. At this hearing, Agent Pat Digiovanni, employed by the Jefferson Parish Sheriff's Office, Narcotics Division, testified that he received information from a CI about a possible narcotics distribution in which a quantity of marijuana would be delivered at a certain time in the 600 block of Wiegand Drive. This CI had been used before and his information had led to other arrests and convictions.
According to Agent Digiovanni, the CI advised him of a vehicle description, including its make and model, a vehicle color, a vehicle license plate, a description of the vehicle's occupants, and the name of one of the occupants, Larry. While heading to that location, the license plate number received from the CI was checked and it was discovered that the truck belonged to Lionel Christophe. Thereafter, a criminal check was run and it was discovered that there was an attachment for his arrest. Christophe's physical description matched that description provided by the CI. Agent Digiovanni further provided that, based on the information received from the CI, he responded to the area and observed the truck on Wiegand Drive and confirmed the license plate. Upon arrival at the location, Agent Digiovanni observed the vehicle pulling out of a driveway around the 600 block. He advised the Project Star deputies of what he saw. The license plate was checked, and after realizing the subject was wanted Deputies Kay Horn and Curtis Mattews stopped the vehicle in the 1200 block of Wiegand Drive. Christophe was arrested. Agent Digiovanni *890 identified defendant in court as the passenger of the vehicle. After it was determined that there was also an attachment for defendant's arrest, he was arrested and a search was conducted incidental to his arrest. This search resulted in the finding of four bags of marijuana in defendant's pocket.
After defendant and Christophe were arrested, the truck was searched as well. Inside the truck, a loaded .45 semi-automatic handgun protruding halfway out of a black nylon holster was found on the floorboard in the middle of both subjects. In addition, an ice chest was found on the seat of the truck between both subjects and contained a quantity of marijuana.
Agent Digiovanni asked defendant where he lived and if he had more marijuana there. Defendant appeared hesitant to give out his address, but Agent Digiovanni received information from the CI that he lived at 132 Fifth Street in Bridge City. Agent Digiovanni's suspicion was raised when he refused to reveal his address so he asked Christophe who stated that defendant lived on the other side of Bridge City behind the Circle K, which the agent knew was where Fifth Avenue was located. Defendant provided a different address.
Agent Digiovanni brought defendant to Fifth Avenue. Defendant told Agent Digiovanni that he lived at the residence with his girlfriend. Agent Digiovanni told defendant that he had enough probable cause to get a search warrant if he did not consent to the search. Without being forced or coerced, defendant signed a consent to search form which listed 132 Fifth Street, Bridge City as his address. Once the side door was opened with a key, a strong odor of burnt marijuana was present. This residence was searched and the same size and design baggies as those found in defendant's pocket were found in the master bedroom. Also in the bedroom, officers found about 15 grams of marijuana and a sawed-off 20 gauge shotgun which was in a laundry basket. Further, officers found mail addressed to defendant, drug paraphernalia and some packaging materials.
Agent Digiovanni testified that he did not verify the name on the house's lease, but read the consent form to defendant and would not expect him to consent to a search of any residence but his own. According to Agent Digiovanni, the information on the consent form was filled out prior to the time when defendant signed the form.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). "The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression." State v. Flagg, 01-65 (La.App. 5 Cir. 7/30/01), 792 So.2d 133, 138, writ denied, 01-2534 (La.9/20/02), 825 So.2d 1159 (citation omitted). To determine whether the trial court's denial of the motion to suppress is correct, the appellate court may consider the evidence adduced at the suppression hearing as well as the evidence presented at trial. State v. Butler, 01-0907 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124 (citation omitted).
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. State v. Boss, 04-457 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585 (citation omitted).
*891 Unless justified under a narrowly drawn exception to the Fourth Amendment's warrant requirement, a warrantless search is per se unreasonable; in addition, the State bears the burden of proving such an exception applies. State v. Bergman, 04-435 (La.App. 5 Cir. 10/12/04), 887 So.2d 127, 129 (citation omitted). One such exception is consent to search when consent is given freely and voluntarily by one who possesses authority or other sufficient relationship to the premises or other effects sought to be inspected. State v. Joseph, 04-1240 (La. App. 5 Cir. 4/26/05), 901 So.2d 590, 597 (citations omitted). "In the context of a premises search, generally consent may be obtained from one having mutual use of the premises." State v. Shed, 36,321 (La. App. 2 Cir. 9/18/02), 828 So.2d 124, 131 (citation omitted). The State has the burden of proving the consent was given freely and voluntarily when it relies on consent to justify a warrantless search. State v. Joseph, supra (citing State v. Taylor, 04-90 (La.App. 5 Cir. 5/26/04), 875 So.2d 962, 967, writ denied, 04-1649 (La.11/19/04), 888 So.2d 193). "Voluntariness is a question of fact to be determined by the trial judge under the totality of the circumstances." State v. Joseph, supra (citation omitted). If the consent is given after an illegal detention or entry, it is valid only if it was the product of a free will and not the result of exploitation of the previous illegality. State v. Cambre, 04-1317 (La. App. 5 Cir. 4/26/05), 902 So.2d 473, 480 (citation omitted).
It does not appear that defendant is challenging the voluntariness of his consent to search the residence, although defendant does reference the officer's statement that he had enough to get a search warrant and would do so if defendant did not consent to the search of the residence. However, this statement does not deem the consent involuntary. Advising a person that if he does not consent to a search that the police will seek a search warrant does not vitiate a resulting consent. State v. Franklin, 95-1876 (La.1/14/97), 686 So.2d 38 (citations omitted).
It appears that defendant challenges the consent to the search, contending that he did not reside there and therefore lacked authority to consent to the search. However, "[a] warrantless search may also be valid even if consent was given by one without authority, if facts available to officers at the time of entry justified the officers' reasonable, albeit erroneous, belief that the one consenting to the search had authority over the premises." State v. Cambre, 902 So.2d at 482 (citing Illinois v. Rodriguez, 497 U.S. 177, 185-189, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999)).
Defendant argues that Agent Digiovanni merely took the CI's word that defendant lived at the residence and conducted no further investigation to justify the search. Defendant further contends that no reasonable cause was established to believe that certain things officers were searching for were located on the property in which entry was sought. The CI advised Agent Digiovanni of defendant's address. It appears that the facts known to the police, aside from the information received from the CI, supported a reasonable belief that defendant had the authority to consent to the search of the residence. Defendant appeared hesitant to tell Agent Digiovanni where he lived. Although defendant initially gave Agent Digiovanni another address, he also told him that he lived at the residence with his girlfriend. Defendant signed a written consent to search the residence. Agent Digiovanni testified that he would not believe someone would consent *892 to the search if the residence was not his. Further, officers used defendant's key from his pocket to enter the residence. In addition, after the CI told Agent Digiovanni where defendant lived, Christophe described the general area of the residence to him.
We find that defendant freely consented to the search of the residence without force and that the officers reasonably believed he had the authority to consent. Therefore, we find that the evidence obtained pursuant to the search of the residence was legal and the motion to suppress such evidence was properly denied.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant argues that he was denied a fair and impartial trial once the trial judge allowed the State to introduce hearsay statements made by the CI without the informant being subjected to cross-examination concerning his reliability and character. Defendant argues this error was not harmless and contributed to the verdict because the State used an unreliable out-of-court statement to impress the jury that defendant intended to distribute drugs. According to defendant, this error was prejudicial and constituted grounds for a mistrial under LSA-C.Cr.P. art. 775.
The State responds that this assignment of error has no merit; however, it contends that even if the admission of Agent Digiovanni's testimony regarding the information received from the CI was in error, the introduction of the testimony was harmless beyond a reasonable doubt.
Defendant cites LSA-C.Cr.P. art. 775, providing that "[u]pon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771." However, a mistrial is a drastic remedy and, except in instances where mistrials are mandatory, is warranted only when the defendant suffers substantial prejudice which deprived him of any reasonable expectation of a fair trial. State v. Johnson, 03-620 (La.App. 5 Cir. 10/28/03), 860 So.2d 180, 186, writ denied, 03-3171 (La.3/19/04), 869 So.2d 849 (citing State v. Harris, 00-3459 (La.2/26/02), 812 So.2d 612, 617). The trial court's ruling on a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Givens, 99-3518 (La.1/17/01), 776 So.2d 443, 454 (citation omitted).
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." LSA-C.E. art. 801(C). "The content of an informant's tip may not be used at trial by a law enforcement officer because the testimony violates the accused's right to confront and cross-examine his accusers." State v. Young, 99-1264 (La.App. 1 Cir. 3/31/00), 764 So.2d 998, 1004-1005 (citing State v. Hearold, 603 So.2d 731, 737 (La. 1992)). However, a police officer's testimony may encompass information provided by another individual without constituting hearsay if offered to explain the course of a police investigation and the steps leading to the defendant's arrest. State v. Hebert, 02-1252 (La.App. 5 Cir. 4/8/03), 846 So.2d 60, 64 (citing State v. Cho, 02-274 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 447, writ denied, 02-2874 (La.4/4/03), 840 So.2d 1213). Yet, as cautioned by the Louisiana Supreme Court, "[T]he fact that an officer acted on information obtained during the investigation may not be used as an indirect method of bringing before the jury the substance of the out-of-court assertions of the defendant's guilt that *893 would otherwise be barred by the hearsay rule." State v. Hebert, supra at 64-65 (citing State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, 809, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000)).
Notwithstanding the erroneous admission of evidence, a verdict will not be reversed if the reviewing court, assuming that the damaging potential of the improperly admitted evidence is fully realized, determines that the error was harmless beyond a reasonable doubt. State v. Wille, 559 So.2d 1321, 1332 (La.1990), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992) (citation omitted). "Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict." State v. Wille, 559 So.2d at 1332 (citation omitted). Confrontation errors are also subject to a harmless error analysis and the verdict may stand if the reviewing court determines that the guilty verdict is surely unattributable to the error. State v. Pierre, 03-1306 (La.App. 5 Cir. 2/23/04), 869 So.2d 206, 214, writ denied, 04-0959 (La.10/1/04), 883 So.2d 1006 (citation omitted). Factors to be considered include the importance of the evidence to the State's case, whether the testimony was cumulative, the presence or absence of additional corroboration of the evidence, the extent of cross-examination permitted and the overall strength of the State's case. State v. Wille, supra.
In State v. Young, 764 So.2d at 1005, a police officer testified that he had received complaints from citizens in the neighborhood that there was much narcotic traffic on a certain road. The defendant challenged this testimony as inadmissible hearsay on appeal. However, the First Circuit concluded that the testimony was used to explain the course of the police investigation and why the officer specifically went to the area.
However, the Fourth Circuit in State v. Thompson, 98-0988 (La.App. 4 Cir. 1/26/00), 752 So.2d 293, 297, writ denied, 01-0087 (La.11/2/01), 800 So.2d 870 concluded that the police officer's testimony regarding an informant's tip was inadmissible hearsay. In State v. Thompson, the officer testified that he initiated a narcotics surveillance of a location based on information that he had received. The officer testified that he received a first name and a description from the informant and that he confirmed the information he received. The Fourth Circuit decided that the officer had gone beyond simply explaining that he had received a tip concerning illegal activity at a certain location which led him to conduct surveillance at that location, when he stated that had he confirmed the first name and description given to him. Although the officer did not go into detail concerning the information he had received by telling the jury the name and description, the Fourth Circuit explained that the jury could nevertheless have inferred that the defendant was the person whose first name and description were confirmed by the officer. Ultimately, the Fourth Circuit determined that the erroneous admission of this hearsay testimony was harmless error. The court determined that the State's case against the defendant was based not on the testimony concerning the information received from the CI but on the officer's testimony that he personally saw defendant engaged in drug activity as well as the defendant's own statement. Id. at 297.
Further, in State v. Thompson, supra at 296, the defendant argued that the trial court improperly denied him the right to confront his accuser by refusing to order that the CI be produced at the motion to suppress hearing. The court found that *894 because the defendant failed to make a formal request for the identity of the CI prior to trial, the trial court did not determine whether the CI's identity should be withheld from the defendant; therefore, no trial court ruling existed for the court to review. Ultimately the court decided the trial court did not err when it failed to order the appearance of the informant at the motion to suppress hearing.
In the present case, defendant objected during trial as to the hearsay statements regarding the CI and asked that his objection be continuing. Defendant also moved for a mistrial on these grounds which was denied. However, defendant did not formally request disclosure of the CI or that he be produced at trial.
Agent Digiovanni was asked on direct examination what was his basis for investigation of illegal drugs on Wiegand Drive on January 4, 2003, and he responded that he received information from a CI. Defendant objected based on hearsay. The court overruled this objection. This statement is not hearsay because this testimony was used to explain the basis and course of the police investigation.
Agent Digiovanni was then asked what type of information he received. He responded that he learned an individual inside of a white Dodge pickup would be delivering a quantity of marijuana to a location on Wiegand. He provided that this CI had proven to be reliable. Defense counsel did not specifically object to this testimony. However, the testimony would still not be considered hearsay.
Agent Digiovanni was then asked if the CI gave him any specific information on who would be in the vehicle. Defense counsel objected and asked the court to note his continuing objection and moved for a mistrial because he did not believe the CI would come to court. The trial court denied defendant's motion for mistrial. Subsequently, Agent Digiovanni then testified that the CI gave him a license plate number, a physical description of the driver and the first name of the passenger of the vehicle, Larry. Further, Agent Digiovanni was asked how he learned of defendant's address and he stated that it was through his CI. The defendant did not object specifically to this response.
While conducting cross-examination, defense counsel asked Agent Digiovanni where the CI was and if he was dead. The trial court sustained the State's objections to these questions. Thereafter, defense counsel asked if the informant had convictions and the State objected. A bench conference was held and the defense counsel argued that the CI had criminal convictions, was not credible, and would not testify in court subject to cross-examination. Defense counsel argued he had a Sixth Amendment right to confront his accusers and argued that he should be able to get in information regarding his character and credibility. He believed the police killed the CI. The trial court sustained the State's objection and defendant renewed his mistrial motion, arguing that he should be able to confront his accusers when the State repeatedly refers to the CI's statements that defendant was going to bring drugs.
Defense counsel then immediately asked Agent Digiovanni whether the information on page one of the police report was information he received from the informant.
We find that some of Agent Digiovanni's testimony went beyond the scope of explaining the course of the investigation. He went into the details of the information he received from the CI. However, the erroneous admission of this hearsay testimony was harmless error. The State's case against the defendant was based not on the testimony concerning the *895 information received from the CI, but on the evidence found thereafter. The record contains support for the charge of possession with intent to distribute and the CI's statement did not attribute to defendant's guilty verdict. The products of the searches as well as the expert testimony of Lieutenant Harrison support this conviction. Further, defendant argues he was denied his right to confront the CI; however, even if defendant was denied confrontation, this error was harmless. Defense counsel did not request disclosure of the CI's identity. In fact, it appears from the record that defendant knew who the informant was and believed he was dead. Regardless, the CI's reliability was demonstrated by the occurrences of the information he predicted. Agent Digiovanni stated that he had used this informant before and had proven to be reliable.
Defendant argues that the prejudicial effect outweighs any probative value of the hearsay testimony. He argues that without the CI's statements, the only evidence presented that defendant intended to distribute drugs was the four bags of marijuana found on him. He contends that the State had nothing else to connect defendant to the house where the gun and scale were found. However, defendant was in possession of a key to the residence and consented to a search of the residence. Further, paperwork with defendant's name was found at the residence and the bags of marijuana found on defendant's person matched bags found at the residence. Christophe described where defendant lived and Agent Digiovanni knew the street described matched the address provided by the CI. In addition, Agent Digiovanni testified that he was told by defendant that he lived with his girlfriend at the residence. The CI's statement was not the only connection. Also, the statement regarding the CI's assertion of defendant's address was only corroborated by defense counsel in cross-examination when he asked about Agent Digiovanni's belief that the residence was defendant's. Agent Digiovanni responded to this question by stating that the CI directed him to defendant's residence and that Christophe had also advised him where defendant lived.
Based on the foregoing, we find that the trial court did not commit reversible error in denying defendant's mistrial motion.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant argues that the trial court committed reversible error by accepting Lieutenant Harrison as an expert because he did not have scientific credentials to prove his expertise, his assessments were based on total conjecture and he did not employ any kind of scientific method in arriving at his conclusions. He contends that no "gatekeeping" function was performed by the trial court so as to deem his testimony reliable. The State responds that this assignment of error lacks merit and that the trial court did not err in allowing Lieutenant Harrison to testify as an expert in this case, citing State v. Esteen, 02-1241 (La.App. 5 Cir. 4/29/03), 846 So.2d 167.
As provided by LSA-C.E. art. 702,
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The trial court has wide discretion in determining the competence of an expert witness and its ruling on the qualification of the witness will not be disturbed absent an abuse of discretion. State v. Torregano, 03-1335 (La.App. 5 Cir. *896 5/11/04), 875 So.2d 842, 847 (citing State v. Craig, 95-2499 (La.5/20/97), 699 So.2d 865, 870, cert. denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997)). Upon review of the trial court's decision, the appellate courts will also consider whether a witness has previously been qualified as an expert. Id.
In State v. Esteen, 02-1241 (La.App. 5 Cir. 4/29/03), 846 So.2d 167, 172, writ denied, 03-1486 (La.1/9/04), 862 So.2d 978, Sergeant Bruce Harrison (who appears to be the same expert challenged in the present case by defendant) was qualified as an expert in the packaging and distribution of narcotics. This Court explained the following:
In Daubert,[1] the United States Supreme Court held that Federal Rule of Evidence 702 imposes an obligation upon a trial judge to ensure that scientific testimony is relevant and reliable. The Daubert court listed several factors that a court could consider in determining the admissibility of an expert's testimony. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue. Daubert, 509 U.S. at 592-593, 113 S.Ct. at 2796. Some factors bearing on this analysis are whether: 1) a theory or technique can be or has been tested; 2) it has been subjected to peer review or has been published; 3) there is a high known or potential rate of error; 4) there are standards controlling the technique's operation; and, 5) the theory enjoys general acceptance in the relevant scientific community. Id. In State v. Foret, 628 So.2d 1116 (La.1993), the Louisiana Supreme Court recognized that courts may rely on the standard enunciated in Daubert when evaluating the admissibility of scientific expert testimony pursuant to Article 702.
In Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the United States Supreme Court found that a trial court may apply the Daubert factors when determining the admissibility of all expert testimony, not just scientific testimony. At the same time, the Court recognized a trial court's broad discretion in determining whether the specific factors in Daubert are reasonable measures of reliability in a particular case. The trial court's decision to admit or exclude expert testimony is subject to the "abuse of discretion" standard. Kumho, 526 U.S. 137, 119 S.Ct. at 1176; State v. Craig, 95-2499, pp. 8-9 (La.5/20/97), 699 So.2d 865, 870, cert. denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997); State v. Stokes, 99-1287 at pp. 5-6, 759 So.2d at 984.
State v. Esteen, 846 So.2d at 174-175 (footnote added). In State v. Esteen, the defendant complained that the trial judge erred in finding Sergeant Harrison to be an expert based only on a "voir dire" of the witness in the jury's presence and that Daubert required the trial court to conduct a full hearing regarding his qualifications outside of the jury's presence. Id. at 175. This Court decided that defendant did not show how Harrison's qualifications were so lacking that the trial court abused its discretion in finding him to be an expert and decided the trial court did not err in allowing him to testify as an expert. Id. at 175-176.
*897 In the present case, according to the voir dire examination, Lieutenant Harrison has been employed with the Jefferson Parish Sheriff's Office and assigned to the Narcotics Section since May of 1995. Before this, he was employed with the New Orleans Police Department for a little over twelve years in which much of his work related to narcotic trafficking. Over the years, Lieutenant Harrison has received over 300 hours of specialized training in narcotics, all of which specialized in narcotics investigation. However, he admitted the majority of the education he has received has been from on the job training, working on the street, and talking to informants. He has made thousands of arrests and has talked to arrested individuals and to people on the street. Lieutenant Harrison has been qualified as an expert approximately one-hundred and twenty times in Orleans Parish and Jefferson Parish and has never been denied expert status.
At trial, defense counsel requested voir dire and asked Lieutenant Harrison questions regarding whether he used drugs and whether he agreed that he was not telling the jury that he knew the habits of every citizen of Louisiana in terms of drug use since each person is different. Defense counsel asked Lieutenant Harrison if he had ever interviewed defendant and he claimed he did not. Thereafter, when asked if he objected to the tender, defense counsel responded as follows:
Yes, I do, Your Honor. With respect to him testifying about drug users, but he can certainly testify to, I guess, the packaging maybe, but out of an abundance of caution I would still lodge an objection for certainly bigger  to any testimony from him about drug addicts or anything like that. I don't believe that he has worked with them, counseled them, or anything like that. I haven't heard that testimony, Judge.
The trial court provided that based on Lieutenant Harrison's experience, training and education he was qualified to testify as an expert in the use, packaging and distribution of illegal narcotics. Defendant did not lodge a further objection to this ruling. On cross-examination of Lieutenant Harrison defense counsel stated that he appreciated the fact that he was an expert in his field and was certainly not going to challenge him on that. Therefore, it does not appear that defendant requested a Daubert hearing.
The defendant has failed to show how Lieutenant Harrison's qualifications were so lacking that he should not have been qualified as an expert in this area. Considering his training and experience, we find that the trial court did not abuse its broad discretion in finding Lieutenant Harrison competent to testify as an expert.
Moreover, we conclude that defendant failed to preserve this issue on appeal. In State v. Torregano, supra, the trial court accepted Dr. Benton as an expert in the field of pediatric forensic medicine competent to testify regarding delayed disclosure, sexual assault and sexual abuse in children. The defendant never challenged the reliability or admissibility of the testimony relating to the theory of delayed disclosure at trial. Instead, the defendant only objected to the expert's qualifications to testify about delayed disclosure. This Court noted in Torregano the Louisiana Supreme Court decision of Cheairs v. State DOTD, 03-0680 (La.12/3/03), 861 So.2d 536, 541-542, which recognized a distinction between challenging the reliability of the methodology used by the expert, which is addressed by a Daubert inquiry, and the expert's qualifications to testify competently regarding the matters he intends to address. Id. at 847 fn. 7. As such, this Court noted that the only issue properly before it was whether Dr. Benton was *898 qualified to testify regarding delayed disclosure. Id. at 847. However, this Court noted that the defendant was not precluded from challenging the admissibility of the expert's testimony relating to delayed disclosure since the issue could be raised through an application for post-conviction relief. Id. at 847 fn. 8.
Therefore, we find that the defendant did not preserve this issue for appeal and this assignment of error will not be addressed.

ASSIGNMENT OF ERROR NUMBER FOUR
Finally, defendant argues that the motion to quash should have been granted because his 2000 plea was defective since the trial court failed to explain that the conviction could be used to enhance a future felony sentence. The defendant contends that with this plea, he could not have made a knowing and intelligent waiver of his rights when he was not fully informed of the consequences of his plea. The State responds that the record does not contain a written motion to quash the bill of information as required by LSA-C.Cr.P. art. 536 and, therefore, defendant is not entitled to relief on his oral motion.
The trial court heard defendant's motion to quash on January 6, 2004 when defendant challenged his prior conviction. Specifically, defendant argued that he was never advised of the consequences of a plea to a felony, that is, that it could be used to enhance a later offense. The trial court denied defendant's motion to quash.
In defendant's brief, he contends that he filed a motion to quash his previous conviction based primarily upon time limitations; however, in argument counsel also objected to the conviction being used because the trial court failed to inform defendant that the conviction could be used for enhancement purposes. He adds that "[b]y this assignment, Mr. Addison wishes to renew his objection to the 2000 conviction in that the Court failed to explain that the conviction could be used to enhance a future felony sentence."
According to LSA-C.Cr.P. art. 536, a motion to quash must be in writing and shall specify distinctly the grounds on which it is based; in addition, the trial court shall hear no objection based on grounds which are not stated in the motion. LSA-C.Cr.P. art. 536. This Court has found that the failure to file a written motion to quash is a waiver of the assignment of error. State v. Jordan, 00-282 (La.App. 5 Cir. 10/18/00), 774 So.2d 267, 273, writ denied, 00-3329 (La.11/9/01), 801 So.2d 363 (citing State v. Arabie, 507 So.2d 859 (La.App. 5 Cir.1987)).
We conclude that this assignment of error has not been preserved for review since it appears defendant has failed to file a written motion to quash regarding the specific grounds in which this assignment of error is based. Therefore, we will not address this issue on appeal.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920: State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters are presented for review.
According to the commitment, defendant was found guilty of count one "DIST./WITD OF A CDSMARIJUANA." However, according to the transcript, defendant was found guilty of count one which was actually possession with intent to distribute marijuana. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Because the commitment *899 appears to indicate distribution as the charge, we remand this matter to allow the trial judge to correct the commitment to conform to the transcript and other parts of the record. See, State v. Francois, 04-1147 (La.App. 5 Cir. 3/29/05), 900 So.2d 1005, 1014.
The minute entry of January 6, 2004 reflects that count two was a violation of "40:9667.c" and the minute entry of January 7, 2004 reflects that count two was a violation of "40:967." According to the bill of information, for count two, defendant was charged with violating LSA-R.S. 14:95.1 since he was in possession of a firearm and had previously been convicted of possession of cocaine in violation of LSA-R.S. 40:967(C).
According to the minute entry, defendant's motion for new trial, motion for arrest of judgment and motion for post judgment of acquittal were heard and denied on January 9, 2004; however, the transcript reflects that these motions were heard and denied on January 15, 2004.
According to the commitment, it appears that defendant was not sentenced separately for each count; however, the transcript reflects otherwise. Further, according to the commitment, defendant was sentenced to ten years imprisonment at hard labor without benefit of probation, parole or suspension of sentence and was ordered to pay a $10,000.00 fine. However, the transcript reflects for count one, possession with intent to distribute marijuana, defendant was sentenced to ten years incarceration in the custody of the Department of Corrections and was fined $10,000.00 plus court costs and a $20.00 jury fee. With regard to count three on the verdict form (count four of the bill of information), felon in possession of a firearm, defendant was sentenced to ten years in the custody of the Department of Corrections, without the benefit of probation, parole or suspension of sentence and was fined $2,000.00 plus costs. The trial court ordered this sentence to run concurrently with the sentence imposed for count one.
We amend the commitment to reflect defendant's full sentence on each count. Although the trial court did not say "at hard labor" when sentencing defendant, as reflected in the commitment, he did say the sentence was to be served in the custody of the "Department of Corrections." In State v. Upchurch, 00-1290 (La.App. 5 Cir. 1/30/01), 783 So.2d 398, 403, this Court determined that, while the transcript did not specifically state the sentence was to be served at hard labor, it did sentence defendant to serve the sentence in the Department of Corrections. "Only individuals actually sentenced to death or confinement at hard labor shall be confined to the Department of Corrections." Id. (citing LSA-R.S. 15:824(C); State v. Boyd, 94-641 (La.App. 5 Cir. 12/28/94), 649 So.2d 80). For this reason, this Court deems it unnecessary to remand the matter for resentencing.
Finally, count four of the bill of information, possession of a firearm by a convicted felon does not contain a statutory citation. However, "[e]rror in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice." LSA-C.Cr.P. art. 464. Count four described the offense, just failed to reference the statute. The statutory citation did appear in the bill of information in count two which charged defendant with the same crime. Further, defendant does not challenge this omission. Therefore, we find that this omission did not mislead the defendant to his prejudice.
Accordingly, we affirm defendant's convictions and sentence and remand this *900 matter with instructions to correct an error patent.
SENTENCE AND CONVICTION AFFIRMED; MATTER REMANDED WITH INSTRUCTIONS.
NOTES
[1] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)