NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-880

STATE OF LOUISIANA

VERSUS

BRIAN KEITH THOMAS

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 75061-FB
HONORABLE THOMAS F. FUSELIER, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

AFFIRMED.

Annette F. Roach
Louisiana Appellate Project
Post Office Box 1747
Lake Charles, LA 70602-1747
(337) 436-2900
COUNSEL FOR DEFENDANT /APPELLANT:
    Brian Keith Thomas

**Trent Brignac**
**District Attorney**
**Julhelene E. Jackson**
**Assistant District Attorney**
**Thirteenth Judicial District**
**Post Office Box 780**
**Ville Platte, LA 70586**
**(337) 363-3438**
**COUNSEL FOR APPELLEE:**
      **State of Louisiana**

**PETERS, J.**

Following a bench trial, the trial court found the defendant, Brian K. Thomas, guilty of attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1. The trial court subsequently sentenced him to serve forty years at hard labor without the benefit of probation, parole, or suspension of sentence; and this court affirmed the conviction and sentence on appeal. *State v. Thomas*, 10-269 (La.App. 3 Cir. 10/6/10), 48 So.3d 1210, *writ denied*, 10-2527 (La. 4/1/11), 60 So.3d 1248, *cert. denied*, ___ U.S. ___, 132 S.Ct. 196 (2011). The matter is before us again based on the trial court's grant of an out-of-time appeal on issues involving the effectiveness of the defendant's prior appellate counsel. For the following reasons, we again affirm the defendant's conviction.

## DISCUSSION OF THE RECORD

The evidentiary background of this criminal offense is set forth in detail in *Thomas*, 48 So.3d 1210, and we incorporate that background herein by reference to that opinion. For purposes of this opinion, it is sufficient to say that sometime shortly after midnight in the early morning hours of October 21, 2007, the defendant and others exchanged gunfire with persons outside the End Zone Bar in Ville Platte, Louisiana. Shannon Fontenot happened to be outside the establishment when the altercation began and was shot. Ms. Fontenot recovered from her gunshot wound.

After completion of the original appeal process, the defendant filed an application for post-conviction relief which the trial court rejected after a January 17, 2013 hearing. The defendant sought supervisory writs to this court, and in *State v. Thomas*, 13-190 (La.App. 3 Cir. 10/23/13) (unpublished opinion), this court issued the following ruling:

**WRIT GRANTED AND MADE PEREMPTORY:** In *State v. Cisco*, 01-2732 (La. 12/3/03), 861 So.2d 118, the supreme court stated that an actual conflict arises when a defense counsel cross-examines a current or former client on a defendant's behalf. Materials submitted by Relator suggest that such a situation arose in the present case. Therefore, in light of *Cisco*, the case is remanded for a re-examination of the conflict-of-counsel issue that was addressed at Relator's post-conviction hearing on January 17, 2013. If the trial court finds an actual conflict occurred, it should determine whether the conflict adversely affected counsel's performance.

Further, the case is remanded for rulings on the substantive issues Relator raises regarding his right to a public trial and his right to effective assistance of appellate counsel. These issues are appropriate for post-conviction relief. La.Code Crim.P. arts. 924.1, 930.3.

The trial court responded to the remand by holding a December 19, 2013 hearing on the issues raised. This hearing resulted in a trial court judgment finding no merit in the defendant's claims that his trial counsel had a conflict of interest in representing him, that the defendant had not been denied effective assistance of counsel at trial, and that the exclusion of the public on the last day of trial did not prejudice him. Additionally, the trial court granted the defendant an out-of-time appeal, but limited the issues to be considered in the out-of-time appeal to the defendant's assertion that his appellate counsel's representation was ineffective in not asserting on appeal that the trial court erred in (1) allowing an investigating officer to testify at trial regarding statements made by a witness to the shooting who was not called as a witness; (2) allowing a discussion between the defendant and the district attorney to be admitted at trial; and (3) allowing a discussion between the defendant and a security guard to be admitted at trial.

2

On appeal, the defendant expressed these issues in two assignments of error:[1]

> 1. The trial court erred in permitting an officer to testify at the trial of this case as to statements made to him by Mario Wilson, denying Appellant the opportunity to confront and cross-examine his accuser as guaranteed to him by the Confrontation Clause of the Sixth Amendment.

> 2. Appellant was denied the right to a fair and impartial trial when the prosecution attempted to introduce conversations made during plea negotiations held during the trial of this case between the District Attorney and Appellant and, further, when security personnel were questioned concerning statements made either to them or in their presence by Mr. Thomas.

## OPINION

United States Constitution Amendment VI and Louisiana Constitution Article 1, § 13 provide that in a criminal proceeding a defendant is entitled to assistance of counsel. To establish a successful claim of ineffective assistance of counsel, a defendant must establish not only that his attorney's performance was deficient, but also that the deficient performance altered the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). A defendant's attorney is "entitled to a strong presumption that his conduct [falls] within the broad range of reasonable professional assistance." *State v. James,* 95-962, p. 5 (La.App. 3 Cir. 2/14/96), 670 So.2d 461, 465. Additionally, "[t]he United States Supreme Court has held that the benchmark for judging a charge of ineffectiveness is whether the attorney's conduct so undermined the proper functioning of the

---

[1] Subsequent to filing his appeal, the defendant sought to raise other issues which he claims were not raised in his first appeal. This court denied that motion based on the trial court's limited out-of-time appeal authorization, but the defendant's appellate counsel included these issues in the brief filed on behalf of the defendant. We limit our review to only those issues specifically referenced in the trial court's grant of the out-of-time appeal.

adversarial process that the trial cannot be considered to have produced a just result." *Id.*

### *Assignment of Error Number One*

Craig Nicholas, a lieutenant with the Evangeline Parish Sheriff's Office and the lead investigator of the shooting incident, testified at trial regarding statements made to him during the initial investigation by Mario Wilson, a witness to the shooting. Mr. Wilson did not testify at trial, and the defendant asserts on appeal that Mr. Wilson's statements to Lt. Nicholas were inadmissible hearsay, and that the trial court erred in allowing him to testify concerning the statements.

According to Lt. Nicholas, later on the same morning after the shooting incident, he interviewed the defendant and Carvanski Fontenot[2] concerning their involvement in the altercation. When questioned, the defendant denied having a weapon at the bar. However, Lt. Nicholas testified that the defendant's denial was contradicted by statements later obtained from Mr. Wilson and others. Lt. Nicholas interviewed Mr. Wilson later that same afternoon and, when asked what Mr. Wilson told him, Lt. Nicholas testified that "According to Mario, in his statement, 'Brian Keith pulled a gun, pointed it towards us, so I started running. And he started shooting, and he shot Shannon in her side.'" Lt. Nicholas testified that he then used the information obtained from Mr. Wilson and other witnesses to obtain an arrest warrant for the defendant on October 23, 2007. The trial court overruled the defendant's objections to the officer's testimony with regard to Mr. Wilson's statements.

> Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801. Hearsay

---

[2] Mr. Fontenot would later be named as a codefendant with the defendant in the shooting.

evidence is not admissible except as otherwise specified in the Code of Evidence or other legislation. La. C.E. art. 802. Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. *State v. Martin*, 458 So.2d 454, 460 (La.1984). Although a statement may constitute inadmissible hearsay, if the statement is merely cumulative or corroborative of other evidence, the admission of the evidence is harmless error. *State v. Hester*, 99-426, p. 17 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 107, *writ denied*, 99-3217 (La.4/20/00), 760 So.2d 342.

A law enforcement officer may testify about information provided by another individual without it constituting hearsay if it is offered to explain the course of the police investigation and the steps leading to the defendant's arrest. *State v. Addison*, 05-378, p. 12 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 892, *writ denied*, 06-1087 (La.11/9/06), 941 So.2d 36. However, an officer cannot testify that he acted on information obtained during the investigation as an indirect method of introducing the substance of out-of-court assertions of the defendant's guilt that would otherwise be barred by the hearsay rule. *Addison*, 05-378 at 12-13, 920 So.2d at 892-93.

*State v. Hernandez*, 11-712, pp. 13-14, (La.App. 5 Cir. 4/10/12), 93 So.3d 615, 624.

In this case, the trial court specifically concluded that the statement was offered, not for the truth of the statement, but to show why Lt. Nicholas sought an arrest warrant for the defendant. On the other hand, the defendant argues that this factual finding was error because Mr. Wilson's statement is dated two days after the shooting and not the afternoon thereof. That being the case, the defendant argues that the statement's only relevance was for the proof of what Mr. Wilson told Lt. Nicholas.

We find the argument concerning the date of Mr. Wilson's interview to be in error. While it is dated October 23, 2007, a clear reading of the statement establishes that it was taken the same day as the shooting. Lt. Nicholas specifically asked Mr. Wilson if "last night or early this morning, were you at the sports bar where some shots were heard and somebody being shot?" When Mr. Wilson

acknowledged he was present at the shooting, Lt. Nicholas followed up by asking Mr. Wilson to tell him what happened "*last night*." (Emphasis added).

We find no error in the trial court allowing Lt. Nicholas to testify concerning the content of Mr. Wilson's statement to him. Additionally, even if Mr. Wilson's statements could be construed as inadmissible hearsay, three other eyewitnesses (Mr. Fontenot, Mr. Wilson, and Mr. Thomas) all testified at trial that they saw the defendant fire a gun in the direction of the victim. "[T]he introduction of statements complained of as hearsay which are merely corroborative and cumulative of other testimony presented by the state is harmless error." *State v. Hawkins,* 90-1235, p. 14 (La.App. 4 Cir. 9/15/95), 667 So.2d 1070, 1080 (citing *State v. Hall*, 624 So.2d 927, 930 (La.App. 2 Cir.), *writ denied,* 629 So.2d 1182 (La.1993), and *State v. Franklin*, 520 So.2d 1047, 1053 (La.App. 3 Cir. 1987)).

We find no merit in this assignment of error.

### *Assignment of Error Number Two*

This assignment of error relates to conversations that occurred on the first day of the bench trial after the trial court had recessed for the day. On the second day of trial, the state attempted to introduce evidence concerning the content of these conversations over the objections of the defendant's trial counsel. Basically, the state attempted to introduce the content of a conversation between the defendant and the district attorney through the testimony of Officer David Monier of the Evangeline Parish Sheriff's Office; and to introduce the content of a conversation between the defendant and Officer Joseph Pelloquin of the Evangeline Parish Sheriff's Office through the testimony of Officer Pelloquin. Officer Pelloquin was the officer responsible for transporting the defendant between the courthouse and the parish jail and watching over him during trial; and

6

Officer Monier was the courthouse security officer and who was present during the meeting between the defendant and the district attorney.

The assistant district attorney informed the trial court that she intended to offer into evidence statements of the defendant made to the district attorney in the afternoon meeting held the day before. The meeting came about, according to the assistant district attorney, at the request of the defendant after learning that his codefendant had accepted a plea offer from the state. The defendant's trial counsel objected to the introduction of the statements, asserting that these were plea negotiation statements and, therefore, inadmissible.

Immediately thereafter, the trial court informed the assistant district attorney that "I would suggest you don't" attempt to offer this particular evidence. The trial court followed that comment by informing the assistant district attorney that the introduction of any conversations involving the defendant that might be overheard when the defendant was talking with his attorney would not be allowed; and that the trial court was "gravely concerned" about the introduction of any elements of the conversation between the defendant and the district attorney. The trial court further stated that:

> And again, I don't know the circumstances around this meeting. If there was an expectation of privacy, then I'm going to honor it. If there was no expectation of privacy. . .For example if [the defendant] was read his rights and told, "Anything you say can and will be used against you in a Court of law. . ."

The trial court went on to explain that:

> My understand [sic] is that the meeting. . .And this is from y'all coming in and saying, "Can I have more time because we have a meeting. We want to talk." Okay. That the conversation between [the defendant] and [the district attorney] was in the form of a negotiation. . .a plea bargain negotiation. And the question becomes is there an expectation of privacy when you're dealing in a plea bargain negotiation. And that's what I'm gonna have to make a decision on.

And I'm gonna need some background before I decide if I want to hear this and how much weight I'm gonna give this.

The defendant's trial counsel informed the trial court that the defendant had not been given his *Miranda* rights prior to the meeting with the district attorney, and the state acknowledged this to be true. However, citing *State v. Ross*, 95-1798 (La. 3/8/96), 669 So.2d 384, the state asserted that because the defendant was not in a custodial environment the statements should be admissible because even if the defendant was in custody, spontaneous and voluntary comments were admissible. The defendant asserted in response that he had an expectation of privacy at all times during the discussions. The trial court noted that terms of plea negotiations were not admissible, to which the state agreed. The trial court distinguished *Ross*, 669 So.2d 384, from the current case in that Ross was being booked when he made the spontaneous comments, and the defendant in this matter was contending that he was in plea negotiations.

In summarizing its position, the trial court made the following ruling:

I'll listen to any testimony, but I'm not gonna include it. And I'm not gonna consider it if I feel it's part of a plea negotiation of [the defendant]. That's just my ruling. I feel that that's his right, and I'm not gonna deprive him of his right in this particular case.

The state then presented the testimony of the two officers.

Officer Pelloquin testified that following the meeting with the district attorney, the defendant asked him whether he thought [the defendant] "should say he had a gun in his hand or if he should say he didn't have a gun in his hand." According to the officer, the defendant also asked him "if he should tell his people testifying for him to say he had a gun in his hand and he shot in the air or that he didn't have a gun in his hand at all." The officer further testified that the defendant commented that his codefendant got a good deal and that the defendant also said

8

"that he didn't know whether to admit he had a gun depending on what [the district attorney] wanted to hear to whether he could get that same deal[.]"

Officer Monier testified that he recalled the defendant requesting the meeting with the district attorney and that he and the defendant's trial counsel were present at the meeting. He recalled that the defendant "was telling [the district attorney] his side of the story," and that he heard some talk "as to what might have been offered [the defendant] prior to this trial in the way of a plea bargain." At some point thereafter, he was asked to leave the room.

Upon completion of this testimony, the state again asserted that the purpose of the meeting was not to reach a plea agreement, but to give the defendant the opportunity to speak to the district attorney "off of the record." The state asserted that the only plea negotiations occurred prior to trial and ended with no agreement. On the other hand, the defendant's trial counsel informed the trial court that he and the defendant were asked to meet with the district attorney the day it was decided the trial would be a bench trial, which was the day before the trial began. He said his client waited most of the day but was never able to see the district attorney. When trial began the next day, the defendant requested that his trial attorney inquire as to why the district attorney wanted to speak with them the day before. This inquiry prompted the actual meeting with the district attorney which the defendant's trial counsel thought was to be an effort at plea negotiations. He acknowledged that security personnel were present, but he still he believed the communications were to be privileged. His belief that the meeting was for plea negotiations was supported by the fact that plea bargain discussions were a part of the meeting with terms being offered and considered. In summary, the defendant's trial counsel stated:

9

I felt we had a. . .sort of an unspoken agreement that we were talking turkey, and we were talking in confidence with each other and that. . .The thought didn't occur to me that this would later come back and be used against my client because of the general practice here of relations between the defense and the District Attorney's office.

When questioned by the trial court as to whether a plea was discussed, the assistant district attorney stated that she "was not privy to a lot of the conversations between [the district attorney] and [the defendant's trial counsel]" but that she had "no reason to doubt the facts as [the defendant's trial counsel] has set them forth." The trial court declared that it was not going to allow any of the proposed testimony, finding that it was too prejudicial.

We find no error in the trial court allowing the evidence it did in order to ascertain whether the overall evidence the state sought to introduce was admissible. In fact, the trial court had the obligation to determine the admissibility of the evidence, and the trial court in this matter made it very clear from the beginning that it considered plea bargains private communications. That being the case, the trial court concluded that the testimony offered by the state violated the defendant's expectations of privacy and refused to consider it.

Nothing in the record before us indicates that what little testimony presented attributed to the trial court's determination that the defendant was guilty of the offense charged. In fact, in the case of a bench trial, a trial judge, by virtue of his training in the law, is able to disregard improperly introduced evidence which is possibly prejudicial. Any error in this case would be harmless as the verdict was surely not attributable to the error. *See State v. Crothers*, 278 So.2d 12, (La. 1973), *cert. denied*, 414 U.S. 1096, 94 S.Ct. 731 (1973), and *State v. King*, 96-1303 (La.App. 3 Cir. 4/2/97), 692 So.2d 1296.

We find no merit in this assignment of error.

In summary, the record before us establishes that the trial court did not err in the rulings raised in the defendant's assignments of error. When there is no error, counsel's performance cannot be construed as ineffective for failure to raise the issues on appeal. *Hines v. Louisiana*, 102 F. Supp. 2d 690 (E.D. La. 2000).

## DISPOSITION

For the foregoing reasons, we again affirm the defendant's conviction in all respects.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION
Uniform Rules—Courts of Appeal, Rule 2-16.3