STATE OF LOUISIANA

VERSUS

MARVIN VILLEGAS-ARDON

NO. 23-KA-323

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-1813, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING

February 28, 2024

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
John J. Molaison, Jr., and Timothy S. Marcel

**AFFIRMED**
   **JGG**
   **JJM**
   **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Honorable Paul D. Connick, Jr.
Thomas J. Butler
Monique D. Nolan
Eric Cusimano

COUNSEL FOR DEFENDANT/APPELLANT,
MARVIN OMAR VILLEGAS-ARDON
Lieu T. Vo Clark

**GRAVOIS, J.**

Defendant, Marvin Omar Villegas-Ardon, appeals his conviction by a unanimous jury of one count of first degree rape upon a known juvenile (DOB 07/01/2009), wherein the child was under the age of thirteen, in violation of La. R.S. 14:42. On appeal, defendant argues that the trial court erred in denying his motions to suppress statement. Finding no merit to the assignment of error, we affirm defendant's conviction and sentence.

## PROCEDURAL HISTORY

On July 22, 2021, a Jefferson Parish Grand Jury indicted defendant, Marvin Omar Villegas-Ardon, with the first degree rape upon a known juvenile (DOB 07/01/2009), G.V.,[1] wherein the child was under the age of thirteen, in violation of La. R.S. 14:42. Defendant was arraigned and pled not guilty on July 26, 2021.

On April 4, 2022, the defense filed a "Motion to Suppress Statement," alleging that defendant's statement was made without the benefit of counsel and an interpreter and "pursuant to an insufficient waiver of his rights to remain silent." A second "Motion to Suppress the Statement(s)" was filed by the defense on December 1, 2022, alleging that defendant's statement was "illegally and unlawfully obtained." Also on December 1, 2022, after a hearing, the trial court denied the motions to suppress statement.[2] The State filed a "Notice of Intent to Use Confession or Statement" on February 2, 2023.[3]

---

[1] In the interest of protecting minor crime victims and victims of sexual offenses as set forth in La. R.S. 46:1844(W)(3), this Court's policy is that published work will use only initials to identify the victim and any defendant or witness whose name can lead to the victim's identity (*i.e.*, parent, sibling, or relative with the same last name as the victim). *State v. E.J.M., III*, 12-774, 12-732 (La. App. 5 Cir. 5/23/13), 119 So.3d 648, 652. *See also* Uniform Rules of Louisiana Courts of Appeal, Rule 5-2.

[2] Although not totally clear from the record, it appears that both of defendant's motions to suppress statement (the one filed on April 4, 2022 and the second one filed on December 1, 2022) were taken up and handled at this hearing.

[3] Additional pleadings were filed in this case. Because these filings are not related to the issues raised in the assignment of error, they are not discussed herein.

On March 9, 2023, a twelve-person jury unanimously found defendant guilty as charged. On March 20, 2023, defendant filed a "Motion for New Trial," which was denied on March 23, 2023. Also on March 20, 2023, defendant filed a "Motion for Appeal." On March 22, 2023, defendant waived sentencing delays and was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The judge then provided defense counsel with a copy of the sex offender notification and registration to review with defendant, and the judge indicated that defendant's sentence would be amended to add a protective order and sex offender registration.

On March 27, 2023, defendant's "Notification to Sex Offender" documents were signed and ordered. The minute entry from that day reflects that defendant was provided with a written copy of his "Notification to Sex Offender" documents, as per La. R.S. 15:543(A), and he was served with a "Louisiana Uniform Abuse Prevention Order." On that same day, defendant's "Motion for Appeal" was granted.

## FACTS

The victim, G.V., first disclosed that she was raped by defendant to a close school friend, who then disclosed the abuse to their fifth grade math teacher, Alexandra Frisard, during the school day on March 31, 2021.[4] Ms. Frisard then contacted her principal, who referred her to Michelle Duplantier, a licensed clinical social worker and the school social worker at G.V.'s school.

Ms. Duplantier testified that on March 31, 2021, she met with G.V. and Ms. Frisard in a room at the school. G.V. described that she had been raped by defendant. Ms. Duplantier recalled that G.V. told her that "Omar," her half-brother, started sexually abusing her when she was in the first or second grade, and

_____

[4] Ms. Frisard testified that she was G.V.'s math teacher and knew her well. She testified that G.V. was her student until the end of the school year in May of 2021.

the abuse happened approximately twice per month. On the same day, because she is a mandatory reporter of suspected child abuse, Ms. Duplantier contacted the Louisiana Department of Children and Family Services and called 9-1-1. Ms. Duplantier said that she called G.V.'s parents to come to the school, but G.V. was the one who spoke to them because her parents did not speak English.

Deputy Justin Encar with the Kenner Police Department Patrol Division testified that on March 31, 2021, he was dispatched to G.V.'s school for a rape complaint, where he was assisted by Detective Joanne Gallagher, also with the Kenner Police Department, who questioned G.V. Deputy Encar said he and Detective Gallagher developed defendant as a suspect, placed him under arrest, and transported him to the detective's interview room.

Detective Gallagher testified that she determined that G.V. and defendant were brother and sister, with the same mother and different fathers.[5] At the time, defendant was already at G.V.'s school, in the truck with his parents.

Detective Gallagher also testified that while they were at the Kenner Police Department, she read a Kenner Police Department Advice of Rights form to defendant in English. She said that he was given the opportunity to read the form, but he did not read it. Defendant signed the form before he talked with her. Detective Gallagher described the form as having the rights both in English and in Spanish, and during the trial, she recited the rights in English. She confirmed that when she advised defendant of his rights and filled out the form, it was not recorded. She explained that she asked defendant if he understood his right to remain silent, and when he answered, "yes," she checked the form.

Detective Gallagher confirmed that both she and defendant spoke in English. She testified that defendant did not indicate any difficulty in understanding what

---

[5] In open court, Detective Gallagher identified defendant as Marvin Villegas.

she was saying, and she did not have difficulty in understanding him.  Detective

Gallagher explained that defendant told her that there are some English words he

had issues with, so she had Officer Joshua Zurita, who spoke Spanish, present

during the interview.  During the recorded interview, defendant never asked for the

translator.  Defendant's audio-recorded interview was played for the jury.[6]

During defendant's interview, he was asked questions by Detective

Gallagher and Detective Nicholas Ingler.[7]  The following is a summary of

defendant's answers.  He was eighteen years old, and G.V. is his younger sister,

who was eleven or twelve.  They have the same mother, but different fathers.  His

mother, step-father, G.V., and his two-year-old sister lived in Kenner.  He came

with his mother from El Salvador to the United States.  He confirmed he was

accused of raping his sister.  When asked why he thought he was being accused of

rape, he responded, "because she told y'all."  He initially denied being alone with

G.V., and he denied inserting his penis inside of her.  Afterwards, he said "it"

happened just once, about two years ago when they lived in another part of

Kenner.  During the first instance, he said he took drugs before he went home, and

he asked G.V. if she wanted to play.  He then asked her to suck his penis, and he

put his penis in her mouth.  During this first time, G.V. was eight or nine, and he

was about sixteen.  The next time, he was not on drugs, and the same thing

happened at the same house.  He said about two months ago, they had sex while at

their Kenner home.  He again asked G.V. if she wanted to play, and he told her he

was going to stick his penis inside her, which he did.  He said he wore a condom

that day, but the other times he did not wear a condom.  He said he inserted his

penis inside her vagina on two occasions.  The other times, he said he inserted his

---

[6] The taped interview, State's Exhibit 20, is 41:53 minutes long.

[7] Detective Nicholas Ingler is phonetically spelled.

penis in her mouth. He admitted that G.V. said "no" about six or seven times. No one was at home when the incidents happened, and he never told anyone.

Paige Culotta, M.D., a child abuse pediatrician at the CARE Center at Children's Hospital, was qualified as an expert in the field of child abuse pediatrics. She testified that on May 5, 2021, she saw G.V. after she went to the emergency room.[8] She confirmed G.V.'s date of birth was July 1, 2009, and she was eleven years old. Dr. Culotta said she performed a vaginal exam on G.V., which showed normal results, which she expected because the body heals very quickly, and the best chance of seeing an injury would be almost immediately after the abuse occurred. Dr. Culotta added that delayed disclosure is more common because children have fears about disclosing and what will happen to them and their family. The audio-recorded interview with Dr. Culotta and G.V. speaking separately was published to the jury.[9]

The following is a summary of G.V.'s interview with Dr. Culotta. G.V. told Dr. Culotta that she was eleven years old and in the sixth grade at Kenner Discovery School. She lived with her mother, her younger sister who was three years old, and her father. Her brother, Marvin (who also went by Omar) used to live with them. She said that about four years previously, her brother Marvin first asked her to "play" when their mother was not home. She told him "no, no," but he did not listen. On several occasions, he put his penis in her mouth. On at least two other occasions, starting with a request to "play," he told her to take her clothes off and he put his penis in her vagina. She also noted another occasion when he put his fingers in her vagina. She said that she never had to touch him anywhere on his body and did not do so. She said that Marvin said it was a bad

---

[8] G.V.'s medical records from the CARE Center and the emergency room were admitted, but were not fully published to the jury.

[9] G.V. was not present at the trial. Efforts were made to contact her and her family for the trial, but were not successful, according to law enforcement testimony at the trial.

thing they did. Marvin told her not to tell their mother because she would probably get in trouble for not telling her earlier. She had been scared that her mother would not believe her, but she then became afraid that he (Marvin) might do the same thing to their little sister, so she told her friend at school. Her friend told a teacher that was close to them, who then called a counselor from "another place" to talk to G.V. The police and her parents came to the school, and her brother was arrested. Thereafter, she had to go to the hospital for an examination, and the next day, spoke to another counselor about the incidents.

G.V. told Dr. Culotta that she wasn't expecting "all what happened" at school after she told her friend, because "everything changed." G.V. said that she is not angry with her brother, nor does she hate him, and that she is worried about him and how he's doing.

Blanca Flores testified that G.V. is her niece and G.V.'s mother was her sister. Ms. Flores identified defendant as Marvin Omar Villegas-Ardon, her nephew. She further testified that she has heard defendant speak English "quite a bit."

## ASSIGNMENT OF ERROR

### *Denial of motions to suppress statement*

On appeal, defendant argues that the trial court erred in denying the motions to suppress his statement. He argues that he was provided a Spanish translator throughout his trial, so it is questionable as to whether he fully understood the waiver of his constitutional rights during his interview with Detective Gallagher. The defense concludes that the State failed to meet its burden that defendant's statement was voluntarily and intelligently given.

The State responds that the advice of rights form was also in Spanish, and the State met its burden of proof.

A defendant bears the burden of asserting the basis for his motion to suppress in order to give the State adequate notice so that it may present evidence and address the issue. La. C.Cr.P. art. 703(E); *State v. Lobo*, 11-51 (La. App. 5 Cir. 10/25/11), 77 So.3d 427, 436, *writ denied*, 11-2586 (La. 3/30/12), 85 So.3d 117. The State has the burden of proving the admissibility of a purported confession or statement by the defendant. *State v. Arias-Chavarria*, 10-116 (La. App. 5 Cir. 9/28/10), 49 So.3d 426, 433, *writ denied sub nom. State ex rel. Arias-Chavarria v. State*, 10-2432 (La. 2/25/11), 58 So.3d 460 (citing La. C.Cr.P. art. 703(D)).

Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his *Miranda*[10] rights, that he voluntarily and intelligently waived his *Miranda* rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises. *Id*. *Miranda* waivers may be either explicit or implicit, and their validity turns on the totality of the circumstances surrounding the statement. *State v. Ross*, 95-1798 (La. 3/8/96), 669 So.2d 384, 386. *See also State v. Scott*, 22-330 (La. App. 5 Cir. 3/15/23), 360 So.3d 92, 101. The admissibility of a confession or statement is a determination for the trial judge, and the judge's conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. *Id*. at 100. Testimony of the interviewing police officer alone may be sufficient proof that a defendant's statements were freely and voluntarily given. *State v. Estes*, 14-781 (La. App. 5

---

[10] *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966).

Cir. 2/25/15), 168 So.3d 847, 860, *writ denied sub nom. State ex rel. Estes v. State*, 15-654 (La. 2/5/16), 186 So.3d 1164.

In determining whether the trial court's ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the suppression hearing, but may also consider the evidence presented at trial. *State v. Sam*, 11-469 (La. App. 5 Cir. 2/14/12), 88 So.3d 580, 586, *writ denied*, 12-631 (La. 9/12/12), 98 So.3d 301.

During cross-examination of Detective Gallagher, the defense alleged that when defendant was asked if he was advised of his rights, he did not answer. Detective Gallagher responded that she asked defendant if she read him his rights, and he said, "Yes." Starting at time stamp 0:47 of defendant's statement, which was played for the jury, reflects that defendant responded "yes, ma'am" both times when Detective Gallagher asked him first if she had read him his rights, and second if he had understood them. He also affirmed that he had signed the paper acknowledging these facts, and read to Detective Gallagher the incident number found on the advice of rights form. As such, defendant confirmed that he was advised of his rights and understood his rights.

Detective Gallagher testified at the suppression hearing as well. Her testimony at the suppression hearing was substantially similar to her testimony at trial. At the suppression hearing, after argument from the State and the defense, the trial court reviewed the rights form and pointed out that the form was in English and Spanish. Thereafter, the trial court issued the following ruling:

> At this time the Court is going to deny the Motion to Suppress the Statement. The Court finds that the defendant signed a waiver of rights form that was in both English and Spanish.
>
> But the defendant appeared from the video tape[11] that the Court observed to be able to communicate effectively in Spanish – I'm sorry, in English, and that the Kenner Police Department had a

---

[11] It appears that the trial court misspoke when she said "video tape." At the hearing, defendant's taped interview was played for the court, but it was audio only without video.

translator should the defendant need it, and the defendant never requested assistance from the translator.

The Court finds that the defendant freely and voluntarily waived his rights per *Miranda* and voluntarily gave a statement.

In *State v. Bueno*, 499 So.2d 362, 363 (La. App. 4 Cir. 1986), the defendant argued that he did not knowingly and intelligently waive his *Miranda* rights because the rights were given to him in English, which was his second language. The appellate court found that the defendant's confession was freely and voluntarily given because there was ample evidence to establish that the defendant could speak, write, and understand the English language. The police officers interrogating the defendant testified that he did not indicate that he did not understand English or his rights, and the officers testified that they had no difficulty in understanding the defendant when he spoke in English.

In the instant case, defendant was read an advice of rights form in English, and he was shown the advice of rights form, which is also in Spanish. The form notified defendant of all of his rights pursuant to *Miranda*, and defendant waived those rights. Detective Gallagher testified that she spoke to defendant in English and he responded in English. She added that defendant did not indicate that he had any difficulty understanding what she said, and she did not have any difficulty understanding him. A translator was present during the entire interview and defendant did not request the translator's assistance or indicate that he did not understand the questions the detectives asked him. Ms. Flores, defendant's aunt, testified that she has heard defendant speak English "quite a bit." As the trial court found when it denied defendant's motions to suppress the statement, defendant appeared to be able to communicate effectively in English, and he did not request the assistance of a translator.

Upon review, considering the totality of the circumstances surrounding defendant's statement to the police, we find that defendant was first advised of his

*Miranda* rights, that he voluntarily and intelligently waived his *Miranda* rights, and that the statement was made freely and voluntarily. Accordingly, the trial court did not err in denying defendant's motions to suppress defendant's statement. This assignment of error is without merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). The review reveals no errors patent in this case.

## DECREE

For the foregoing reasons, defendant's conviction and sentence are affirmed.

## AFFIRMED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY <u>FEBRUARY 28, 2024</u> TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-KA-323

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
MONIQUE D. NOLAN (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          LIEU T. VO CLARK (APPELLANT)

**MAILED**
ERIC CUSIMANO (APPELLEE)
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053